No. 2--04--0544

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

BURMAC METAL FINISHING COMPANY,

Plaintiff-Appellant,

v.

WEST BEND MUTUAL INSURANCE COMPANY,

Defendant-Appellee.

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court

of Winnebago
 County.

No. 97--L--252

Honorable

Ronald L. Pirrello,

Judge, Presiding.

______________________________________________________________________________

JUSTICE BYRNE delivered 
the
 opinion of 
the
 court:

Plaintiff, Burmac Metal Finishing Co., 
brought a claim against 
defendant
, West Bend Mutual Insurance Co., its commercial insurer, to cover 
the
 loss of its commercial property after a fire damaged 
the 
property.  The jury found that 
plaintiff
 failed to substantially perform 
the
 condition of 
the
 insurance contract that required 
plaintiff
 to maintain its automatic sprinkler system and returned a general verdict in favor of 
defendant
.  Thereafter, 
the
 trial court entered judgment for 
defendant
 and awarded it costs in 
the
 amount of $3,632.

P
laintiff
 appeals the judgment, contending that the trial court erred in denying its motion for a judgment notwithstanding 
the
 verdict or, in 
the
 alternative, 
denying its motion for a new trial.  
Plaintiff further contends that 
the
 trial court abused its discretion in awarding costs to 
defendant
. 
 We affirm.

BACKGROUND

Duane and Susan Dickson have been 
the
 owners and 
operators of 
plaintiff
 since 1981.  Some time around 1990, 
the
 Dicksons relocated 
plaintiff
's operations to a building located at 
2300 11th Street in Rockford, which it insured through 
defendant
.  Plaintiff sought coverage from 
defendant
 after a natural gas explosion and ensuing fire caused damage to 
the
 building on March 29, 1997.  Defendant denied coverage, claiming 
plaintiff
 failed to satisfy a condition precedent under 
the
 insurance policy when 
plaintiff
 failed to properly maintain its automatic sprinkler system, which was required by 
the
 protective safeguards endorsement (PSE) to 
the
 policy.  Plaintiff filed a complaint for declaratory judgment against 
defendant
.

Deposition testimony revealed that 
plaintiff
's employees were directed to plug at least three sprinkler heads that had been placed over an oven in 
plaintiff
's building.  Plaintiff was seeking to prevent 
the
 building's automatic sprinkler system from activating over 
the
 area containing 
the 
oven because of 
the
 high heat generated by 
the
 oven.  Plaintiff did not inform 
defendant
 of 
the
 sprinkler removals.  An independent insurance adjuster hired by 
defendant
 testified that he found 13 capped sprinklers, including one sprinkler that had been over 
the
 oven.  His investigation revealed that 
the
 fire had originated in 
the
 area of 
the
 oven.

The trial court granted 
defendant
's motion for summary judgment, finding that 
plaintiff
 did not comply with 
the
 conditions of 
the
 policy and therefore was not entitled to coverage.  Thereafter, 
plaintiff
 appealed.  
Burmac Metal Finishing Co. v. West Bend Mutual Insurance Co.
, No. 2--00--1390 (2002) (unpublished order under Supreme Court Rule 23).

On appeal, w
e found that 
the
 policy clearly required 
plaintiff
 to maintain a sprinkler system in its 11th Street building as a condition precedent to insurance coverage
.  However, we held that 
the
 question of whether 
plaintiff
 substantially complied with 
the
 condition precedent of maintaining 
the
 sprinkler system was a question of fact that should have precluded 
the
 granting of 
summary judgment
.  The record revealed that 
plaintiff
 removed and plugged only 3 to 13 sprinklers
 out of over 600 and that, although 
the
 fire may have originated in 
the
 area of 
the
 plugged sprinklers, 
the
 disabled sprinklers may not have caused or contributed to 
the
 fire.  This presented a question of fact as to 
plaintiff
's compliance, and accordingly, we held that 
summary judgment 
was improper.  Thus, 
the
 cause continued on remand to a jury trial on 
the
 sole question of whether 
plaintiff
 substantially complied with 
the
 condition precedent of maintaining 
the
 sprinkler system in question.

THE JURY TRIAL ON REMAND

At 
the
 jury trial on remand, Duane testified that 
the
 building was equipped with an automatic sprinkler system consisting of approximately 600 sprinkler heads.  The system consisted of four major sections and 
the
 water flow to each section was controlled by a separate "post-indicator valve" or PIV.  If a PIV is in 
the
 closed position, there is no water flow to 
the
 portion of 
the
 sprinkler system controlled by 
the
 closed PIV.  However, a closed PIV can be overridden if necessary to fight a fire.  The configuration of 
plaintiff
's automatic sprinkler system remained unchanged from 1990 through 
the
 time of 
the
 fire.

Duane testified that during 
the
 summer of 1996, 
plaintiff
 remodeled 
the
 southwest portion of its facility to incorporate a new coating line, 
the
 Atwood Line, 
which included a washer, a dryer, a coating section, and a high-heat oven 
that operated at 375 degrees Fahrenheit.
  When 
the
 Atwood Line finally went into production, sprinkler heads in 
the
 area immediately in front of 
the
 high-heat oven began discharging water.  Plaintiff tried to correct 
the
 problem with new sprinkler heads, but was unsuccessful.  In order to avoid further disruption in production, Duane directed an employee named Brad Sassman to remove and replace several sprinkler heads with metal plugs or caps.  Duane acknowledged that three sprinkler heads were removed and replaced with plugs.

Prior to his death, Edward Archer gave a discovery deposition.  Portions of 
the
 deposition were read into evidence during 
the
 trial.  At 
the
 time of 
the
 fire, Archer was district chief of 
the
 Rockford fire department and was 
the
 first member to arrive 
at 
the
 scene of 
the
 11th Street fire on March 29, 1997.  He testified that, upon his arrival, 
the
 southwest portion of 
the
 building was in flames.  He also inspected 
the
 building several days after 
the
 fire and observed between 9 and 19 capped sprinkler heads.

Darrell Roum and Brad Sassman also testified concerning 
the
 capped sprinkler heads.  Roum stated that, during his inspection of 
plaintiff
's site, he discovered 19 capped sprinkler heads, all of which were adjacent to 
the
 high-heat oven located in 
the
 southwest portion of 
the
 building.  He prepared a diagram depicting 
the
 location of 
the
 capped sprinkler heads, which was introduced into evidence.  Roum also testified that he had a conversation with Duane, Arthur Pestcoe, and Bruce Frazier, representatives of 
the
 public adjuster 
plaintiff
 hired to represent it in connection with 
the
 loss.  Roum related that Pestcoe stated in Duane's presence that no water flowed through 
the
 portion of 
the
 sprinkler system that serviced 
the
 location of 
the
 March 29 fire because 
the
 PIV was shut off.

Sassman testified that he was directed by Duane in 
the
 summer of 1996 to cap sprinkler heads in 
the
 area immediately adjacent to 
the
 high-heat oven
.  Sassman explained to 
the
 jury that he removed two sprinkler heads and replaced them with metal plugs.  Shortly after he capped 
the
 first two heads, "a couple more heads went off,
" and Duane sent him to 
the
 hardware store 
to purchase more metal plugs.  He purchased 20 to 39 more plugs, but he refused Duane's directive to remove and replace more sprinkler heads.  Sassman testified that he did not know whether any more heads were capped and did not know what happened to 
the
 additional plugs that he purchased.

Plaintiff employed Per Mar Security to maintain 
the
 automatic sprinkler system, although Per Mar denies that it did anything other than inspect and test 
plaintiff
's system.  It is undisputed, however, that Per Mar inspected and tested 
the
 sprinkler system on a monthly basis and that after each visit a representative would generate a report listing 
the
 results of 
the
 inspection.  Susan admitted at trial that from time to time she received and signed 
the
 monthly inspection reports.  Susan testified that on March 3, 1997, she signed a Per Mar inspection report that specifically indicated that 
the
 PIV that controlled 
the
 water supply to 
the
 portion of 
the
 sprinkler system that serviced 
the
 location of 
the
 Atwood Line was in 
the
 closed position.
  Susan testified that 
she did not inform defendant
 that any sprinkler heads had been removed and capped during 1996.  In fact, she did not even know about 
the
 capping until Duane told her after 
the
 fire occurred.

William Moran, who worked for Per Mar during 
the
 months leading up 
to 
the
 fire and who inspected and tested 
the
 sprinkler system for water flow on March 3, determined that 
the
 PIV that controlled 
the
 water flow through 
the
 portion of 
the
 sprinkler system that protected 
the
 location of 
the
 Atwood Line was in 
the
 closed position, and he had Susan sign 
the
 report so indicating.
  Moran testified that 
the
 PIV that controlled 
the
 water to 
the
 portion of 
the
 sprinkler system that serviced 
the
 Atwood Line was in 
the
 closed position each time he checked it between June 1996 and March 1997.

Ann Kempka, a former
 underwriter employed by defendant
, testified that 
plaintiff
's automatic sprinkler system met underwriting guidelines when she renewed 
plaintiff
's policy in December 1996.  Kempka did not learn about 
the
 capping until after 
the
 fire.  According to Timothy Wiedmeyer, who was then 
defendant
's property claims specialist, to 
the
 best of his knowledge, 
plaintiff
 did not make 
defendant
 aware of 
the
 fact that sprinkler heads had been removed and capped prior to 
the
 fire.

Dennis Dyl, a professional engineer who was certified and specially trained in 
the
 concepts, principles of cause, and origin of fires, testified on behalf of 
defendant
.  He investigated 
the
 11th Street fire and opined that 
the
 damages caused to 
the
 building resulted from a fire that originated in 
the
 area of 
the
 pilot to 
the
 main burner of 
the
 large high-heat oven in 
the
 southwest corner of 
the
 building.  In his opinion, an aluminum pilot line that 
plaintiff
 used to connect 
the
 oven burner pilot to a nearby natural gas supply failed and 
the
 failure of 
the
 pilot line resulted in a gas leak that was, in turn, ignited by 
the
 adjacent oven burner.  He believed that 
the
 fire began below 
the
 automatic sprinkler system and was not preceded by an explosion.

Following closing argument, 
the
 jury 
returned a general verdict in favor of 
defendant
 and in addition answered two special interrogatories finding that (1) three or more capped sprinklers existed at 
the
 time of 
the
 loss, and (2) 
the
 existence of three or more capped sprinkler heads at 
the
 time of 
the
 loss constituted a failure to substantially perform 
the
 condition of insurance that required 
plaintiff
 to maintain its automatic sprinkler system.

Plaintiff filed a posttrial motion for 
judgment notwithstanding 
the
 verdict or for a new trial, which was subsequently 
denied.  Following the denial of its posttrial motion
, 
defendant
 filed a motion for a bill of costs
.  
Thereafter, 
the
 trial court granted 
defendant 
costs in 
the
 amount of $3,632.
 
 Plaintiff timely appeals.

MOTION TO STRIKE

Before we begin our analysis, we must address 
defendant
's motion to strike 
plaintiff
's brief for its failure to comply with Supreme Court Rule 341(e)(6) (188 
Ill. 2d
 R. 341(e)(6)).  Defendant 
points out that p
laintiff's two-page statement of facts
 refers to our earlier Rule 23 order for "the relevant facts necessary for a general understanding of this appeal" and further directs that 
the
 balance of "relevant facts necessary for an understanding of 
the
 issues raised will be addressed in 
the
 Argument section of 
the
 Brief."  Defendant asserts that 
the
 problem with 
plaintiff
's fact section is twofold:  first, 
the
 
factual summary in 
the
 previous Rule 23 order is not a record of 
the
 trial testimony and evidence that 
the
 jury considered to reach 
the
 verdict and judgment currently on appeal; and 
second, plaintiff
's reference to 
the
 record at various points in 
the
 argument section of 
the
 brief is not 
the
 equivalent of 
stating those facts that are necessary to an understanding of 
the
 case, stated fairly and without argument as required by Rule 341(e)(6).

After reviewing 
plaintiff
's brief, we agree with 
defendant
 
that 
plaintiff
's
 statement of facts is woefully lacking for 
the
 reasons 
defendant
 sets forth.  Failure to comply with 
the 
rules regarding appeal briefs is not an inconsequential matter.  
Collier v. Avis Rent a Car System, Inc.
, 248 
Ill. App. 3d
 1088, 1095 (1993).  An appellate court has the right to strike an appellant's brief and dismiss the appeal as a result of the appellant's failure to provide a complete statement of facts.  
Alderson v. Southern Co.
, 321 Ill. App. 3d 832, 845 (2001).  A party's failure to comply with Rule 341 is grounds for disregarding its arguments on appeal.  
Jeffrey M. Goldberg & Associates, Ltd. v. Collins Tuttle & Co.
, 264 Ill. App. 3d 878, 886 (1994).  
This is especially troubling here
 
because we previously warned
 counsel
 in 
the
 Rule 23 order
 to heed Rule 341
.
 
 
Accordingly, we 
express our displeasure with 
plaintiff
's counsel and admonish Edward Eshoo, Jr., and Michael L. Childress for failing to comply 
with Rule 341
.  
Despite 
their
 lack of professionalism, however, because defendant has provided a summary of the relevant evidence in its response brief and the issues are simple, we will not penalize plaintiff severely for the lapses of its counsel.  W
e therefore deny 
defendant
's motion to strike 
plaintiff
's brief on appeal.

ANALYSIS

Plaintiff argues on appeal that the trial court erred by: (1) denying its motion for a judgment notwithstanding 
the
 verdict (judgment 
n.o.v.
)
; and (2) denying its motion for a new trial because 
the
 court:  (A) allowed 
defendant
's
 expert, Dennis Dyl, to testify about 
the
 cause and origin of 
the
 fire; (B) allowed evidence regarding 
plaintiff
's alleged violation of 
the
 PSE by removing and replacing sprinklers with metal plugs; (C) refused its tendered jury instruction; (D) allowed 
defendant
's jury instruction; and (E) allowed 
the
 special interrogatories.  Plaintiff also argues that 
the
 trial court abused its discretion in awarding costs to 
defendant
.

1. Judgment Notwithstanding the Verdict

A judgment 
n.o.v.
 can be entered only 
if all of the evidence, viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could ever stand.  
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 494, 510 (1967); 
A.D. v. Forest Preserve District
, 313 
Ill. App. 3d
 919, 922 (2000).  We review 
de
 
novo
 
the
 trial court's decision to grant or deny a motion for judgment 
n.o.v.
  
Jones v. Chicago Osteopathic Hospital
, 316 
Ill. App. 3d
 1121, 1125 (2000).

In support of its first contention, plaintiff claims that 
it 
removed and capped 
the
 sprinkler heads prior to 
the
 effective date of 
the
 December 1996 policy of renewal in force on 
the
 date of 
the
 March 1997 fire.  Because 
the
 removal and capping occurred prior to 
the
 date of renewal, 
plaintiff
 surmises that it did not 
alter, modify, or change the
 
sprinkler system 
in any way 
after
 
the
 effective date of 
the
 renewal policy.  Because 
plaintiff
 did not
 alter, modify, or change 
the
 sprinkler system in any way after 
the
 effective date of 
the
 renewal policy, 
plaintiff
 contends that 
the
 question of whether it "substantially complied" with 
the
 terms and conditions of 
the
 PSE should have been decided in its favor as a matter of law.

We agree with 
defendant
 that, because 
the
 jury may not have believed that 
all
 of 
the
 capping in question occurred prior to 
the
 effective date of 
the
 December 1996 policy of renewal, 
the
 trial court correctly denied 
plaintiff
's motion for judgment 
n.o.v.
  Duane Dickson admitted to 
the
 jury that three sprinkler heads were capped in either June or July 1996.  Apart from Dickson's testimony, 
the
 jury also heard from others concerning 
the
 number of sprinkler heads that were capped prior to 
the
 fire.  Brad Sassman testified that he capped two sprinkler heads before his departure from 
plaintiff
 in July 1996.  Sassman testified that he refused Dickson's order to cap more sprinkler heads and that, at Dickson's direction, he purchased 20 to 30 additional metal plugs.  Darrell Roum testified that he located 19 capped sprinkler heads.  Chief Archer testified that he observed between 9 and 19 capped sprinkler heads.  Given 
the
 variance between 
the
 3 sprinkler heads Dickson admits were capped in June or July 1996 and 
the
 9 to 19 capped sprinkler heads detected by Roum and Chief Archer,
 the
 jury could have reasonably concluded that some if not all of 
the
 additional 16 sprinkler heads were capped after 
the
 effective date that 
defendant
's policy was in force.
  
Viewing 
the
 evidence in a light most favorable to 
defendant
, we must assume 
the
 jury concluded that on 
the
 date of 
the
 loss there were 19 capped sprinkler heads, not 3, and 
that some of 
the
 sprinkler heads were capped after 
the
 effective date of 
defendant
's renewal policy in force on 
the
 date of 
the
 fire.

Even if we were to accept 
plaintiff
's position on capping, 
plaintiff
's argument is nothing more than a recharacterization of its earlier argument in 
the
 prior appeal that 
plaintiff's
 renewal of 
the
 policy 
somehow imputed defendant
 with 
the
 knowledge that 
the
 sprinkler heads were disabled or that 
defendant
 accepted 
the
 risk.
  However, we 
rejected plaintiff's
 waiver and estoppel 
argument in our Rule 23 order when we found that 
the
 knowledge that 
the
 sprinkler heads were disabled could not be imputed to defendant because there was no evidence whatsoever that 
defendant
 knew or should have known that any of 
the
 heads had been capped.  Indeed, plaintiff does not allege that it ever told 
defendant
 about 
the
 capping, and we still find no evidence 
that 
defendant
 otherwise knew or should have known that
 the sprinkler heads had been disabled before 
the
 policy was 
renewed
.

As a matter of law, a renewal of a policy is, in effect, a new contract of assurance, and, unless otherwise expressed, on 
the
 same terms and conditions as were contained in 
the
 original policy.  
Dungey v. Haines & Britton, Ltd.
, 155 
Ill. 2d
 329, 334 (1993); 
Economy Fire & Casualty Co. v. Pearce
, 79 
Ill. App. 3d
 559, 563 (1979); 
Rivota v. Kaplan
, 49 
Ill. App. 3d
 910, 918 (1977).  Unless provided otherwise, it is 
the
 general rule that when a policy renewal is made, 
the
 terms and conditions of 
the
 original policy become part of 
the
 renewal contract of insurance.  
Dungey
, 155 
Ill. 2d
 at 334.

Since at least 1990, 
plaintiff
's building was insured under 
defendant
's policy, which included a PSE in one form or another.  Since 1992, 
defendant
's renewal policies included a PSE that required 
plaintiff
 to maintain its automatic sprinkler system as a condition to coverage.  Thus, as a matter of law, 
the
 same terms and conditions contained in 
the
 December 1992, December 1993, December 1994, and December 1995 renewal policies also were part of 
the
 December 1996 renewal policy.  Therefore, 
the
 evidence regarding 
the
 composition of 
plaintiff
's automatic sprinkler system before 
the
 December 1996 renewal, as well as 
the
 evidence concerning 
the
 efforts to "maintain" 
the
 sprinkler system prior to 
the
 December 1996 renewal, was and is highly germane and material to 
the
 question of whether 
plaintiff
 was in substantial compliance with 
the
 PSE at 
the
 time of 
the
 March 1997 fire.  By operation of law, 
defendant
 was entitled to assume that 
the
 automatic sprinkler system in place and being maintained at 
the
 time of 
the
 
December renewals from 1992 through 1995 was 
being maintained between 
the
 December 1996 renewal and 
the
 date of loss.  As 
the
 jury determined, however, based upon 
the
 trial testimony of Duane Dickson, Brad Sassman, Darrell Roum, Chief Archer, and William Moran, 
the
 automatic sprinkler system that existed in December 1995 was not 
the
 same automatic sprinkler system that existed on 
the
 date of loss.

Moreover, 
it is unquestioned that parties to an insurance contract should act in good faith.  P
laintiff
 was not a lay person, unknowledgeable in 
the
 field of insurance.  P
laintiff
 was familiar with 
the
 terms of 
the
 previous insurance policies and knew that an alteration to 
the
 sprinkler system might affect 
the
 acceptance or continuation of 
the
 risk.  W
e find it patently ridiculous to assume 
defendant
 would have renewed 
the
 policy without modifying 
the
 terms if it had known about 
the
 
capping
 or if it at least had had a chance to determine whether 
the
 insured met its underwriting guidelines.
  
Accordingly, we 
find that the trial court properly denied the motion for judgment 
n.o.v.

2. New Trial

On review, 
the
 denial of a motion seeking a new trial will be disturbed only if it was an abuse of discretion; 
the
 applicable standard of review asks whether 
the
 jury's verdict was against 
the
 manifest weight of 
the
 evidence.  
Kritzen v. Flender Corp.
, 226 
Ill. App. 3d
 541, 547 (1992).

A. Expert Testimony

Plaintiff next contends 
that the trial court erred in denying its motion for a new trial based on 
the
 failure to bar 
defendant
's expert, Dennis Dyl, from testifying as a cause and origin expert.  
Relying on 
section 15(a) of the
 Private Detective, Private Alarm, Private Security, and Locksmith Act of 1993 (the Private Detective Act) (225 ILCS 446/15(a) (West 2002)), plaintiff contends that Dyl's testimony should have been barred because he was not licensed by 
the
 state as either a professional engineer or a private detective at 
the
 time he started and conducted his investigation into 
the
 cause and origin of 
the
 fire.

Under 
the
 Private Detective Act
, anyone who investigates 
the
 causes and origins of fires must be licensed under 
the
 statute.  225 ILCS 446/15(a) (West 2002).  In 
People v. West
, 264 
Ill. App. 3d
 176, 184 (1994), 
the
 court held that 
the
 Private Detective Act barred an unlicensed person from testifying as an expert as to 
the
 cause and origin of a fire because his investigation was conducted in contravention of 
the
 statute and, thus, 
the
 trial court erred in allowing his testimony at trial.
  
Plaintiff contends that 
West
 required the trial court to bar Dyl from testifying at trial because Dyl lacked a proper license at the time of the investigation and investigated the cause and origin of the fire in contravention of the statute.
  We find that 
the
 Private Detective Act does not apply in this case
.

The licensing requirement of 
the
 Private Detective Act contains an exception for persons licensed by 
the
 state
 to practice professional engineering
.  225 ILCS 446/30(a)(1)(M) (West 2002).
  The Professional Engineering Practice Act of 1989
 defines a "professional engineer" as a person licensed under 
the
 laws of 
the
 State of Illinois to practice "professional engineering."  225 ILCS 325/4(m) (West 2002).  Although he was licensed as a professional engineer in Wisconsin at 
the
 time of 
the
 investigation and he was licensed in Illinois at 
the
 time of trial, Dyl was not licensed in 
Illinois at 
the
 time of 
the
 investigation.
  The Professional Engineering Practice Act, however, does not prevent employees of professional engineers lawfully practicing as sole owners, partnerships, or corporations from acting under 
the
 direct supervision of their employers
.  225 ILCS 325/3(b)(1) (West 2002).  We note that there have been several modifications of 
the
 Private Detective Act 
over 
the
 years, but 
the
 professional engineering exemption is common to every version of 
the
 statute.

Plaintiff contends that Dyl was not employed by and working under 
the
 direct supervision of a licensed professional engineer at 
the
 time of his investigation and therefore his testimony should not have been allowed.  
Dyl's prelicensing cause-and-origin activities were in compliance with 
the
 Private Detective Act because his work was done under 
the
 direct supervision of a licensed Illinois professional engineer, Dr. Kent Johnson.  The Professional Engineering Practice Act defines "direct supervision" as "work prepared under 
the
 control of a licensed professional engineer or that work as to which that professional engineer has detailed professional knowledge."  225 ILCS 325/4(f) (West 2002).  The deposition testimony revealed that Dyl and Johnson were employed by Bodycote Taussig, Inc., and that Johnson had detailed professional knowledge about Dyl's activities.  Based on 
the
 evidence presented, 
the
 trial court concluded that Dyl's work was prepared under 
the
 control of a licensed professional engineer or was work as to which that professional engineer had detailed knowledge.  We cannot say that 
the
 trial court abused its discretion.

The decision whether to admit expert testimony is a matter within 
the
 sound discretion of 
the
 trial court, and such a ruling will not be reversed absent an abuse of discretion.  
Thompson v. Gordon
, 349 
Ill. App. 3d
 923, 929 (2004).  Expert testimony is admissible if 
the
 proffered expert is qualified by knowledge, skill, experience, training, or education, and 
the
 testimony will assist 
the
 trier of fact in understanding 
the
 evidence.  
Thompson
, 349 
Ill. App. 3d
 at 929.  We find that based on Dyl's knowledge, skill, experience, training, and education, 
the
 trial court's decision to admit his testimony was a proper exercise of discretion.

B. Admission of
 Evidence of Capping the Sprinkler Heads

In a variation of its first contention, 
plaintiff
 next argues that 
the
 trial court erred in allowing 
evidence regarding 
plaintiff
's alleged violation of 
the
 PSE by 
removing and replacing
 3 to 19 
sprinkler heads, because the removal and replacement occurred prior to 
the
 effective date of 
the
 December 1996 policy period.

As we stated above,
 
the
 problem with 
plaintiff
's argument is that 
the
 jury may not have believed that all of 
the
 capping in question occurred prior to 
the
 effective date of 
the
 December 1996 renewal. 
 Duane admitted to capping three sprinkler heads in either June or July 1996.  However, Roum and Chief Archer detected 9 to 19 capped sprinkler heads.  
Thus, because of the variances in this testimony
, 
the
 jury could have reasonably concluded that some if not all of 
the
 sprinkler heads were capped after 
the
 effective date of 
the
 policy.  Consequently, we see no reason to disturb 
the
 court's denial of 
plaintiff
's motion for a new trial based on this argument.

C. Jury Instructions

Plaintiff next contends that 
the
 trial court erred in failing to grant it a new trial because it suffered prejudicial error as a result of the court's allowing or denying certain
 
jury instructions and special interrogatories.  
Litigants have 
the
 right to have submitted to 
the
 jury instructions that inform 
the
 jury of 
the
 issues presented, 
the
 legal principles to be applied, and 
the
 facts that must be proved to support a verdict.  
Friedman v. Park District of Highland Park
, 151 
Ill. App. 3d
 374, 388 (1986).  Illinois Pattern Jury Instructions (hereinafter IPI) must be used unless 
the
 trial court first determines that 
an
 IPI instruction does not contain an accurate statement of 
the
 law.  177 
Ill. 2d
 R. 239.  It is only when 
the
 IPI does not contain a proper instruction on a subject that a non-IPI instruction 
may be given.  
Taylor v. Village Commons Plaza, Inc.
, 164 
Ill. App. 3d
 460, 465 (1987).  The proper test for determining whether 
the
 jury was properly instructed is whether, taken as a whole, 
the
 instructions were clear enough so as not to mislead and whether they fairly and accurately stated 
the
 applicable law.  
Howat v. Donelson
, 305 
Ill. App. 3d
 183, 186 (1999).  "A trial court's determination as 
to 
the
 instructions to be given to 
the
 jury will not be disturbed absent an abuse of discretion."  
Howat
, 305 
Ill. App. 3d
 at 186.

Plaintiff first contends under this argument that 
the
 trial court abused its discretion when it refused to give 
its instruction No. 15, which provides:

"To prevail on its breach of contract claim, Burmac must prove that it complied with 
the
 condition of maintaining 
the
 sprinkler system.  However, Burmac need not prove that is strictly complied with 
the
 condition.  Rather, Burmac need only show [it] substantially performed 
the
 condition to be entitled to coverage under 
the
 insurance policy.  Burmac should not be denied coverage and thereby forced to forfeit all of 
the
 premiums that it had paid to West Bend based on a technical or nonmaterial defect in performance.
"

Based on our Rule 23 order, 
the
 question of "substantial compliance" with 
the
 condition precedent to coverage was 
the
 central issue of contention at trial.  In response, both parties proposed instructions concerning 
plaintiff
's obligation with 
respect to the
 condition precedent of coverage.  Regarding 
the
 issue of "substantial compliance," 
plaintiff
 submitted its proposed
 instructions Nos. 13 through 18.  Defendant submitted its proposed 
instructions Nos. 4 through 6 and No. 11.  None of 
the
 original "substantial compliance" instructions offered by either party were accepted and issued by 
the
 trial court.  The instructions were either rejected or withdrawn during 
the
 instruction conference.  The trial court denied 
plaintiff
's instruction No. 15 on 
the
 basis that it was too argumentative.

After considering argument of counsel, 
the
 Illinois Pattern Jury Instructions, Civil, No. 700.12 (hereafter IPI Civil (2000)) on "substantial performance," and case authority on 
the
 issue of "substantial compliance," 
the
 trial court ultimately gave two instructions on 
the
 issue: defendant's instruction No. 5, as modified, and 
plaintiff
's instruction No. 16.  During 
the
 conference, 
plaintiff
's counsel expressed approval of 
the
 trial court's rulings and its combination
 of 
the
 instructions
.  A party waives any objection to a jury instruction by failing to object to it at the instruction conference.  
Lawler v. MacDuff
, 335 
Ill. App. 3d
 144, 149 (2002).  Accordingly, by agreeing with the trial court's decision to give 
instruction No. 16,
 
plaintiff
 has waived 
the argument that 
the
 trial court erred in failing to give 
plaintiff
's instruction No. 15.

Even without waiver, we agree with 
the
 trial court that 
plaintiff
's instruction No. 15 is argumentative and that 
the
 instruction 
the
 trial court gave on 
the
 issues of "substantial performance" and 
plaintiff
's duty to "substantially comply" with 
the
 "condition of coverage under 
the
 policy of Insurance" was sufficiently clear so as not
 to mislead 
the
 jury.  Here, 
plaintiff
's instruction No. 16 was based on IPI Civil (2000) 
No. 700.12, and 
defendant
's instruction No. 5, unlike 
plaintiff
's instruction No. 15, defined 
plaintiff
's compliance obligations in a manner more consistent with 
the
 Rule 23 order, but without undue repetition or emphasis.

Plaintiff next contends that 
the
 trial court abused its discretion when it gave 
defendant
's instruction No. 3, as modified.  The instruction sets 
forth the
 
definition of a contract, as defined in IPI Civil (2000) No. 700.01, describes 
the
 terms of 
the
 contract of insurance, including that 
defendant
 will pay for direct physical loss or damage to property
, 
contains a condition that plaintiff
 
must maintain 
the
 protective devices or services of 
the
 PSE, and sets forth 
the
 definition of 
the
 
automatic sprinkler system. 
 However, plaintiff also waived this argument because it agreed at 
the
 instruction conference to allow 
this
 instruction.  We find no abuse of discretion.

Plaintiff next contends that
 special interrogatories Nos. 1 and 2 were improperly given.  We disagree.

"The purpose of a special interrogatory is not to instruct 
the
 jury, but to act as a check on its verdict."
  
Fakhoury v. Vapor Corp.
, 218 
Ill. App. 3d
 20, 27 (1991).  Specifically, special interrogatories are used to test 
the
 general verdict against 
the
 jury's conclusions as to 
the
 ultimate controlling facts.  A special interrogatory should be single and direct, should not confuse, mislead, or prejudice a jury, and should use 
the
 same language or terms as 
the
 instructions.  
Fakhoury
, 218 
Ill. App. 3d
 at 27.  It is not error to give a special interrogatory that is consistent with 
the
 instructions that were properly given and that places no greater burden on 
the
 
plaintiff
 than 
the
 instructions.  
Fakhoury
, 218 
Ill. App. 3d
 at 27.

Here, the special interrogatories specifically tested 
the
 jury's response to 
the
 sole question for which we remanded 
the
 cause: whether 
plaintiff
 substantially performed 
the
 condition precedent of maintaining 
the
 sprinkler system.
  The jury first responded yes to 
the
 question asking whether three or more capped sprinkler heads existed at 
the
 time of loss and yes to 
the
 question whether 
the
 existence of 
three or more capped sprinkler heads constituted a failure to substantially comply with 
the
 condition precedent to coverage.  We do not find that 
the
 interrogatories 
confused or misled 
the
 jury or placed any undue burden on 
plaintiff
.  A negative answer to either of these interrogatories would have undermined 
the
 jury's general verdict. 
 Accordingly, we hold that the trial court properly denied 
plaintiff
's motion for a new trial.

3. Award of Costs

Plaintiff finally contends that 
the
 trial court erred in awarding costs to 
defendant
.  The trial court granted 
defendant
 filing fees of $98, subpoena and witness fees 
of $433,
 and $3,101, which was
 
one-half of the total of all 
the
 court reporter fees charged to both parties
, finding 
in 
its
 discretion 
that said
 fees were a necessity to trial.  Plaintiff argues that
 
(1) $289 of 
the
 subpoena and witness fees were associated with 
the
 trial setting that was mooted by 
the
 trial court's earlier grant of summary judgment that should not have been awarded, and (2) one-half of 
the
 court reporter fees associated with 
the
 November 2003 jury trial was a litigation
 expense 
not covered by statute or law and, therefore, because it was not an expense commonly understood to be "court costs," should not have been awarded as a matter of law.

A prevailing party may receive costs only 
where a statute or supreme court rule so provides.  
Irwin v. McMillan
, 322 
Ill. App. 3d
 861, 864 (2001).  "Costs are allowances in 
the
 nature of incidental damages awarded by law to reimburse 
the
 prevailing party, to some extent at least, for 
the
 expenses necessarily incurred in 
the
 assertion of his rights in court."  
Galowich v. Beech Aircraft Corp.
, 92 
Ill. 2d
 157, 165-66 (1982).  
The taxing of allowable costs is an area in which 
the
 trial court exercises its discretion, to which we will defer unless that discretion is abused.  
Myers v. Bash
, 334 
Ill. App. 3d
 369, 371 (2002).

Section 5--109 of 
the
 Illinois Code of Civil Procedure provides that a prevailing defendant may recover certain costs.  735 ILCS 5/5--109 (West 2002).  
The term "costs" is not defined in section 5--109 or any of 
the
 previous versions of 
the
 statute.  However, in 
the
 recent
 decision of 
Vicencio v. Lincoln-Way Builders, Inc.
, 204 
Ill. 2d
 295 (2003),
 
the
 supreme court held that it is undisputed that section 5--108, which applies to prevailing plaintiffs, mandates that 
the
 costs taxed to 
the
 losing party
 are commonly
 understood to be "court costs," such as filing fees, subpoena fees, and statutory witness fees
.  
Vicencio
, 204 
Ill. 2d
 at 302.  The same conclusion clearly applies to section 5--109.  Accordingly, 
we find that 
the
 trial court did not abuse its discretion in awarding 
defendant
 
subpoena and witness fees from 
the
 trial.

We must resolve whether 
the
 trial court erred in taxing 
plaintiff
 $289 of 
the
 
subpoena and witness fees 
that allegedly
 were mooted by 
the
 trial court's earlier grant of 
summary judgment.  
However, 
we cannot make a reasoned decision because 
plaintiff
 (1) failed to differentiate between 
the
 
subpoena and witness fees that were issued before 
and after the
 trial court granted 
summary judgment and (2) 
failed to provide us with 
the
 transcript of 
the
 proceedings or a bystander's report of 
the
 hearing on 
defendant
's motion for costs.  
Furthermore, 
the
 trial court stated that 
the
 fees were a necessity to 
the
 trial and, without a transcript of 
the
 hearing, u
nder 
the
 principles of 
Foutch v. O'Bryant
, 99 
Ill. 2d
 389, 391 (1984), we must resolve against 
plaintiff
 any uncertainty arising from 
the
 incompleteness of 
the
 record.

T
he
 question of whether 
the
 taxing of court reporter fees and expenses incurred under circumstances similar to 
the
 present case has never been addressed by a court or statute in Illinois.  We note that 
defendant
 asserts that 
plaintiff
's counsel arranged for 
the
 court reporter and points out that 
plaintiff
 benefitted throughout 
the
 trial with "same-time" court reporting through a direct computer link and also benefitted from daily draft transcripts, and subsequently refused to pay. 
 
Plaintiff does not refute 
defendant
's assertions; it merely points out that there is no statutory or case law authority for taxing 
the
 costs of a court reporter against 
the
 losing party and argues that therefore 
defendant
 should not be entitled to recover defendant's portion of the total
 fees
. 
 In ruling on 
defendant
's bill of costs, 
the
 trial court determined, in its discretion, that under 
the
 circumstances, 
the
 court reporter fees and expenses constituted a "necessary" expense of litigation, in that 
the
 transcriptions were essential to 
the
 trial and further provided a record of 
the
 trial.  
Given that 
plaintiff
 does not refute that it benefitted from 
the
 court reporter, which it arranged for,
 and that 
the
 trial court awarded 
defendant its portion of the reporter's costs
, we see no abuse of discretion.

For the foregoing reasons, we affirm the order of the circuit court of Winnebago County.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.