No. 93–6577. DAVIS v. MINNESOTA. Sup. Ct. Minn. Certiorari denied.

JUSTICE GINSBURG, concurring.

I write only to note that the dissent's portrayal of the opinion of the Minnesota Supreme Court is incomplete. That court made two key observations: (1) "[R]eligious affiliation (or lack thereof) is not as self-evident as race or gender," 504 N. W. 2d 767, 771 (Minn. 1993); (2) "Ordinarily . . . , inquiry on voir dire into a juror's religious affiliation and beliefs is irrelevant and prejudicial,

and to ask such questions is improper," *id.*, at 772 (adding that "proper questioning . . . should be limited to asking jurors if they knew of any reason why they could not sit, if they would have any difficulty in following the law as given by the court, or if they would have any difficulty in sitting in judgment").

JUSTICE THOMAS, with whom JUSTICE SCALIA joins, dissenting.

During jury selection for petitioner's trial on a charge of aggravated robbery, the prosecutor used a peremptory strike to remove a black man from the venire. Petitioner, who is black, objected on *Batson* grounds and requested a race-neutral explanation for the strike. See *Batson* v. *Kentucky,* 476 U. S. 79, 97 (1986). The prosecutor responded that she had struck the venireman because he was a Jehovah's Witness and explained that "[i]n my experience Jahovah Witness [sic] are reluctant to exercise authority over their fellow human beings in this Court House." 504 N. W. 2d 767, 768 (Minn. 1993). The trial court accepted that reason for the strike and proceeded to trial. Petitioner subsequently was convicted.

On appeal, petitioner conceded that the prosecutor's explanation for the strike was race neutral, but contended that *Batson* should be extended to prohibit peremptory strikes based on religion. The Supreme Court of Minnesota rejected petitioner's *Batson* argument and affirmed the conviction. The court reasoned that this Court has never held that "*Batson* should extend beyond race-based peremptory challenges," and noted that "*Batson,* itself, speaks solely of the need to eradicate racial discrimination." *Ibid.* Acknowledging that "[i]f the life of the law were logic rather than experience, *Batson* might well be extended to include religious bias and, for that matter, an endless number of other biases," *id.*, at 769, the court nevertheless concluded that, because *Batson* had been confined by this Court to the context of race, it should not be broadened to reach petitioner's claim in this case, 504 N. W. 2d, at 772.

I find it difficult to understand how the Court concludes today that the judgment of the court below should not be vacated and the case remanded in light of our recent decision in *J. E. B.* v. *Alabama ex rel. T. B., ante,* p. 127, which shatters the Supreme Court of Minnesota's understanding that *Batson*'s equal protection analysis applies solely to racially based peremptory strikes. It is abundantly clear that the lower court was relying

on just such a reading of *Batson*, for it reasoned that *Batson* embodies "'a special rule of relevance'" that operates only in the context of race, and concluded that "'[o]utside the uniquely sensitive area of race the ordinary rule that a prosecutor may strike without giving any reason applies.'" 504 N. W. 2d, at 771–772 (quoting *Brown* v. *North Carolina*, 479 U. S. 940, 942 (1986) (O'CONNOR, J., concurring in denial of certiorari)). In extending Equal Protection Clause analysis to prohibit strikes exercised on the basis of sex, *J. E. B.* explicitly disavowed that understanding of *Batson*.

Indeed, given the Court's rationale in *J. E. B.*, no principled reason immediately appears for declining to apply *Batson* to any strike based on a classification that is accorded heightened scrutiny under the Equal Protection Clause. The Court's decision in *J. E. B.* was explicitly grounded on a conclusion that peremptory strikes based on sex cannot survive "heightened scrutiny" under the Clause, *ante*, at 135, because such strikes "are not substantially related to an important government objective," *ante*, at 137, n. 6. In breaking the barrier between classifications that merit strict equal protection scrutiny and those that receive what we have termed "heightened" or "intermediate" scrutiny, *J. E. B.* would seem to have extended *Batson*'s equal protection analysis to all strikes based on the latter category of classifications—a category which presumably would include classifications based on religion. Cf. *Larson* v. *Valente*, 456 U. S. 228, 244–246 (1982); *Batson, supra,* at 124 (Burger, C. J., dissenting). It is at least not obvious, given the reasoning in *J. E. B.*, why peremptory strikes based on religious affiliation would survive equal protection analysis. As JUSTICE SCALIA pointed out in dissent, *J. E. B.* itself provided no rationale for distinguishing between strikes exercised on the basis of various classifications that receive heightened scrutiny, *ante*, at 161, and the Supreme Court of Minnesota certainly did not develop such a distinction. As described above, the court relied expressly on the understanding that *Batson* was confined to the context of race. Under these circumstances, this case should be remanded for the Supreme Court of Minnesota to consider explicitly whether a principled basis exists for confining the holding in *J. E. B.* to the context of sex.

I can only conclude that the Court's decision to deny certiorari stems from an unwillingness to confront forthrightly the ramifications of the decision in *J. E. B.* It has long been recognized

by some Members of the Court that subjecting the peremptory strike to the rigors of equal protection analysis may ultimately spell the doom of the strike altogether, because the peremptory challenge is by nature " " "an arbitrary and capricious right." " " *Batson, supra,* at 123 (Burger, C. J., dissenting) (quoting *Swain* v. *Alabama,* 380 U. S. 202, 219 (1965) (quoting *Lewis* v. *United States,* 146 U. S. 370, 378 (1892))). Cf. *J. E. B., ante,* at 161–162 (SCALIA, J., dissenting). Once the scope of the logic in *J. E. B.* is honestly acknowledged, it cannot be glibly asserted that the decision has no implications for peremptory strikes based on classifications other than sex, or that it does not imply further restrictions on the exercise of the peremptory strike outside the context of race and sex.

In my view, the petition should therefore be granted, the judgment below vacated, and the case remanded for reconsideration in light of *J. E. B.* I respectfully dissent.