UNITED STATES of America,

v.

Stuart SOMERSTEIN, Marianna Somerstein, Sylvia Bromley and John Iacovetti, Defendants.

No. CR. 96–657(ADS).

United States District Court, E.D. New York.

April 5, 1997.

Zachary W. Carter, United States Attorney by Laura A. Ward, Assistant United States Attorney, Garden City, NY, for U.S.

Stillman & Friedman (Charles A. Stillman, Rebecca Stead, of counsel), New York City, for Stuart Somerstein.

Newman & Schwartz (Gustave H. Newman, Annemarie Hassett, of counsel), New York City, for Marianna Somerstein.

Paul B. Bergman, New York City, for John Iacovetti.

MEMORANDUM OF DECISION
AND ORDER

SPATT, District Judge.

Presently before the Court is a relatively narrow issue: whether the Government violated the rule in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) when it exercised its peremptory challenges to excuse a number of potential jurors who are ostensibly of the Jewish faith or have a relationship with persons who are Jewish. This challenge however, opens the door to a several important questions: whether persons of the Jewish faith are protected by *Batson;* would it be as a race or a religion; and if Batson does apply to what relationship, if any, does it extend?

I. *Background*

This case involves a criminal indictment of officers and employees of Somerstein Caterers of Lawrence, New York, apparently a kosher caterer in the Long Island area. The indictment charges the defendants, with, among other crimes, conspiring to defraud benefit funds of Local 100 of the Hotel Employees and Restaurant Employees International Union. Jury selection was conducted on March 24 and March 25, 1997 by United States Magistrate Judge E. Thomas Boyle. At the close of voir dire, the prosecution exercised six of its nine peremptory challenges to excuse the following potential jurors from the panel: Jan Ellen Grossman, James Lefkowitz, Dale Holtzman, Irwin Bedell, Eugene Meyer, and Vanessa Mary Longo. At that time, defense counsel objected to these challenges on the ground that they constitute a violation of the *Batson* rule because they are based on membership in or affiliation with a given religion, in this case Judaism.

After hearing the Government's response, Judge Boyle overruled the objections. A "notice of appeal" was then filed in this Court. The Court now conducts a de novo review.

II. *Discussion*

In *Batson,* the Supreme Court recognized that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race...." *Batson,* 476 U.S. at 89, 106 S.Ct. at 1719. In *J.E.B. v. Alabama,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), the Supreme Court extended the rule of *Batson* to prevent the use of peremptory challenges on the basis of gender, reasoning that "[s]triking individual jurors on the assumption that they hold particular views simply because of the gender is 'practically a brand upon them, affixed by the law, an assertion of their inferiority.'" *Id.* at 141, 114 S.Ct. at 1428, citing *Strauder v. West Virginia,* 100 U.S. 303, 308, 25 L.Ed. 664 (1880). In reaching its conclusion, the Court focused on the fact that "[t]he message it [the use of peremptory challenges to strike women] sends to all those in the courtroom, and all those who may later learn of the discriminatory act, is that certain individuals, for no reason other than gender, are presumed unqualified by state actors to decide important questions upon which reasonable persons could disagree." *Id.* at 141, 114 S.Ct. at 1428.

In *State v. Davis,* 504 N.W.2d 767, 771 (Minn.1993), *cert. denied sub. nom, Davis v. Minnesota,* 511 U.S. 1115, 114 S.Ct. 2120, 128 L.Ed.2d 679 (1994), the Minnesota Supreme Court upheld a conviction where the prosecutor admittedly applied a peremptory challenge to a Jehovah's Witness explaining that "[i]n my experience Jahovah Witness [sic] are reluctant to exercise authority over their fellow human beings in this Court House." *Id.* at 768. In affirming the conviction, the court reasoned that *Batson* should not be extended beyond race based challenges and that applying *Batson* to religion would essentially open a pandora's box.

In denying certiorari, Justice Ginsburg wrote a concurring opinion noting two "key" observations: (1) that religious affiliation is not as self evident as race or gender; and (2) ordinarily, questions into religious affiliation are irrelevant, prejudicial and improper. *Davis v. Minnesota,* 511 U.S. 1115, 114 S.Ct. 2120, 2120, 128 L.Ed.2d 679 (1994).

The dissenting opinion to the denial of certiorari, authored by Justice Thomas and joined by Justice Scalia, recognized that limiting the rule of *Batson* to race based chal-

lenges ignores the Court's holding in *J.E.B.* Reading *Batson* and *J.E.B.* in tandem, Justice Thomas reasoned that "no principled reason immediately appears for declining to apply *Batson* to any strike based on a classification that is accorded heightened scrutiny under the Equal Protection Clause." *Davis,* 511 U.S. at 1117, 114 S.Ct. at 2121.

In the Court's view, the dissenting opinion in *Davis* best represents the state of the *Batson* doctrine at the present time. In other words, the same "message" that the Supreme Court hoped to avoid with its decision to apply *Batson* to gender based peremptory strikes, namely that women would be unfit "to decide important questions upon which reasonable persons could disagree," is no less offensive to the notions of equal protection when applied to other classes which receive heightened scrutiny, which would presumably include religious denominations. *Id.; see* Benjamin Hoorn Barton, Note, *Religion–Based Peremptory Challenges after Batson v. Kentucky and J.E.B. v. Alabama: An Equal Protection and First Amendment Analysis,* 94 Mich. L.Rev. 191 (1995) (arguing that "religion-based peremptory challenges are unconstitutional"). In adopting the reasoning of the dissent in *Davis,* the Court acknowledges the insightful observations of Justice Ginsburg, that religious affiliation is not as self evident as race or gender, which will inevitably lead to factual disputes as to whether the particular juror is of the Jewish faith, as well as possible factual hearings on the issue. Nevertheless, based on a logical extension of the precedents cited, the Court concludes that *Batson* should apply.

However, even if the Court were to conclude that religion was not covered by the *Batson* rule, there would be a an alternative argument for protecting the use of peremptory challenges against Jewish panel members. In *Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987), the Supreme Court, in considering the definition of the term "race" as that term is applied in a Section 1981 analysis, *see* 42 U.S.C. § 1981, recognized that the statute contemplated protection for those discriminated against on the basis of "their ancestry or ethnic characteristics." *Id.* at 613, 107

S.Ct. at 2028. The legislative history of section 1981 reflects this conclusion and refers to the "Jews" as a separate race. *Id.* at 612, 107 S.Ct. at 2027–28. In *Shaare Tefila Congregation v. Cobb,* 481 U.S. 615, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987), the Supreme Court recognized that Jews could make out a claim for racial discrimination under 42 U.S.C. § 1982. *Id.* at 617, 107 S.Ct. at 2021–22; In *Jews for Jesus, Inc. v. Jewish Community Relations Council of N.Y., Inc.,* 968 F.2d 286, 291 (2d Cir.1992) the Second Circuit reached the same conclusion with respect to civil rights conspiracy claims brought pursuant to 42 U.S.C. § 1985(3). *Cf. United States v. Gelb,* 881 F.2d 1155, 1161 (2d Cir.), *cert. denied,* 493 U.S. 994, 110 S.Ct. 544, 107 L.Ed.2d 541 (1989) (recognizing that a Jewish defendant could mount a Sixth Amendment challenge to a Long Island jury pool which contained an underrepresentation of Jews but denying the challenge on the ground that a lack of Jewish surnames does not necessarily connote an absence of Jewish panel members). Based on these cases, which treat Jews as a race for the purposes of civil rights claims, the Court holds that whether persons of the Jewish faith are considered a religion or a race or both, in the context of this case, the *Batson* rule does apply.

Having determined that *Batson* applies to religious classifications, such as persons of the Jewish faith, the Court must add some refinements in this type of challenge. First, before a Court applies *Batson* to a challenge on religious grounds, there must be a determination as to whether the religion of the juror is relevant to the issues of the case. Generally, the religion of a juror is not relevant to the jury selection process, in the legal sense. Accordingly, the preference of attorneys for one religious group over another should not be the basis for a *Batson* challenge. In a criminal case, only if the religion of the jurors is directly relevant to the crimes at issue, can such a challenge be proper. In this case, the defendants are kosher caterers specializing in making kosher affairs, and they are accused of criminal conduct in connection with an alleged scheme to defraud their employees' benefit funds.

Based on the particular and unique facts of this case, in which, arguably, the religious element is intertwined in the criminal charges, the Court rules that the religion of the jurors would be relevant as a foundation for a *Batson* challenge.

■ Second, exercising the flexibility required in this kind of sensitive issue of initial impression, the Court rules that the inquiry should involve only the juror and not the family or friends of the juror. Applying these rules, the Court now focuses on whether the Government's use of peremptory challenges to the panel members named above violates the equal protection clause as embodied in *Batson*.

In *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), the Supreme Court summarized:

> Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination.

*Id.* at 767, 115 S.Ct. at 1770–71, citing, *Hernandez v. New York*, 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1865–66, 114 L.Ed.2d 395 (1991) (plurality opinion). Interestingly, in *Purkett*, it was held that the second step of the inquiry "does not demand an explanation that is persuasive, or even plausible." *Id.* at 768, 115 S.Ct. at 1771. The explanation need only have a "facial validity." *Id.* " 'Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' " *Id.*, quoting, *Hernandez*, 500 U.S. at 360, 111 S.Ct. at 1866–67. In applying the standard in *Purkett*, the Court upheld a prosecutor's use of a peremptory strike to a black panel member because of his "long, unkempt hair." *Id.*

Having stated the applicable standard, the Court no turns to each of the challenges at issue.

1. *Jan Ellen Grossman*

■ According to Ms. Grossman's questionnaire, she described herself as "Irish/German." However, she states that her husband is of "Hebrew, Polish and Russian" descent. Although the Court acknowledges that generally, the equal protection clause may protect a person based on his relationship with another, *see Pisello v. Town of Brookhaven*, 933 F.Supp. 202 (E.D.N.Y. 1996) (holding that a white real estate broker who provides housing for minority tenants is protected by the equal protection clause), as stated above, this Court is of the view that a *Batson* challenge based on religious affiliation cannot be maintained on the basis of a panel member's relationship with a member of the protected class. Accordingly, although with regard to this juror the Court determined that the defendants had made out a prima facie case in its ruling from the bench, upon reconsideration, the Court reverses that determination and finds that the defendants have failed to establish a prima facie showing with respect to Ms. Grossman. There is insufficient evidence to establish that she is of the Jewish faith. As a result, the Government need not advance a facially valid reason for the peremptory challenge and the defendants' objection to the use of this challenge is denied.

2. *James Lefkowitz*

■ The defendants object to the peremptory challenge to James Lefkowitz for two reasons: (1) his "quintessential Jewish name;" and (2) his father, an attorney, was president of "AMPAL" (American Palestine), and "deals a lot with issues that take place in Israel . . . basically, they do legal representation for a bank." Tr. 9. Assuming that this juror is Jewish, in the Court's view the defendants satisfy the initial requirement of a prima facie case of religious discrimination. However, the Government's response that Mr. Lefkowitz read a book throughout the entire voir dire indicates not only a limited attention span as the prosecution contends, but a total lack of interest in this important criminal proceeding, and/or a disrespect for the Court and the process. These reasons

are certainly sufficient to constitute a facially valid reason for the challenge.

At oral argument on April 2, 1997, after the jury was selected and no longer in the courthouse, the defendants raised a factual objection to the Government's claim that this potential juror was reading a book throughout the entire voir dire. The Court notes that the time to have raised this factual issue was at the time of jury selection and not a day after the potential juror has been excused. Again, the defendants have failed to demonstrate that the reason for this challenge is a pretext for purposeful discrimination and their objection is denied.

### 3. *Dale Holtzman*

■ Ms. Holtzman described herself as "Jewish American" in her questionnaire. However, as the defendants admit, Ms. Holtzman is not a union member and she candidly stated that she was "uncomfortable" and "angry" with having to cross a union picket line at her place of employment. In fact, the Government attempted to challenge her for cause. In the Court's view, this reason more than meets the "facial validity" requirement set forth in *Purkett*, and the defendants have not overcome this highly persuasive reason with a showing of purposeful discrimination. As a result, Judge Boyle's ruling is affirmed with regard to the peremptory challenge to this juror.

### 4. *Irwin Bedell*

■ According to the defendants, Mr. Bedell is Jewish because he attends a cousins club that is catered by a kosher caterer. Again, assuming without really knowing that he is Jewish, the Court will review the *Batson* challenge. As a "facially valid" reason for the preemptory challenge, the prosecution noted that, among other reasons, Mr. Bedell stated that he attends union meetings "only if they served breakfast." Such a flip statement may demonstrate a disregard for the Union, for the process, or both. In the Court's view, this reason is a sufficient basis for exercising a peremptory challenge which the defendants have not demonstrated cloaks purposeful religious discrimination and the

defendants' objection to this challenge is denied.

### 5. *Eugene Meyer*

■ As both parties exercised peremptory challenges with regard to Mr. Meyer, the Court believes that no *Batson* analysis is required. However the Court notes from his questionnaire that he was born in Decatur, Indiana and is a member of the Knights of Columbus. Nevertheless, according to the defendants "Meyer" is an "ambigu[ous]" name, and they object to the Government's challenge because he has "attended kosher catered events." In this regard, the Court notes that many people in the Eastern District of New York not of the Jewish faith have attended a kosher catered event. In the Court's view, this objection fails to state a prima facie case of discrimination. As a result, the Government is not required to put forth a "facially valid" reason for the challenge and the defendants' objection to this strike is denied.

### 6. *Vanessa Mary Longo*

■ In her questionnaire, Ms. Longo described herself as "American (German, Lithuanian, Polish)" and her husband as first generation Italian American. According to the defendants however, striking Ms. Longo constitutes unlawful discrimination because her nephew, namely her brother's son, was Bar Mitzvahed. The basis for the objection seems to be that either Ms. Longo is herself of Jewish ancestry, a highly unlikely supposition, or that her brother married a Jewish woman. Assuming the latter to be the case, the Court again expresses its grave doubt that a *Batson* challenge based on religion could ever be applied to a panel member's relationship with a third party. Accordingly, the objection to this challenge is denied.

In affirming the rulings of Judge Boyle, the Court notes the defendants' argument that its objections should be governed by the Second Circuit decision *Howard v. Senkowski*, 986 F.2d 24 (2d Cir.1993). The *Howard* court held that where the prosecutor stated that race was a factor in his exercise of peremptory challenges, a "dual motivation" principle applies. This principle, once trig-

gered, requires that the Government bear the burden of proof to persuade the court that the same challenges would have been exercised for race neutral reasons even if race had not been a factor.

In the Court's view however, the ruling in *Howard* is not applicable in this situation. Initially, it is not clear to what extent the "dual motivation" test has survived the "facially valid" standard enunciated by the Supreme Court in *Purkett*. Nevertheless, assuming that *Howard* is still the law in this Circuit, there is an insufficient showing that race or religion played a role in the Government's exercise of its peremptory challenges. This case is hardly the equivalent of the "smoking gun" in Howard where the prosecutor conceded that race was a factor in his peremptory challenges. Although the Court has held that the defendants were able to establish a prima facie case with respect to certain panel members, the defense has not established that the Government applied religion or race as a factor in the jury selection process so that a "dual motivation" test is appropriate.

III. *Conclusion*

Having reviewed the parties' submissions, and heard oral argument, and for the reasons set forth above, it is hereby

ORDERED, that upon a de novo review, the decisions of United States Magistrate E. Thomas Boyle with respect to the Government's peremptory challenges are affirmed in all respects.

SO ORDERED.