Allen WILLIAMS, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A03–0404–CR–164.

Court of Appeals of Indiana.

July 6, 2005.

Transfer Denied Sept. 14, 2005.

Marce Gonzalez, Jr., Merrillville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, J.

Allen Williams ("Williams") was convicted of murder by a jury in the Superior Court of Lake County in 2004 and sentenced to fifty-eight years. He appeals, raising the following reordered and restated issues:

I. Whether the trial court erred when it upheld the State's use of a per-emptory challenge to remove a potential juror;

II. Whether the trial court's response to the jury's request for additional guidance violated Williams's constitutional right to be present and Indiana Code section 34–36–1–6 (1999); and,

III. Whether Williams's sentence violated his Sixth Amendment rights under *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

Concluding that the trial court did not err in upholding the State's peremptory challenge, and that Williams's constitutional rights were not violated, we affirm.

### Facts and Procedural History

On December 22, 2001, the State charged Williams with the murder of Anthony Batey. The State amended the charging information on February 8, 2002, adding a charge of murder in the perpetration of a robbery. The lesser-included offense of robbery was added during a pretrial conference. Williams's first jury trial commenced on February 3, 2003, and ended in a deadlocked jury. His second jury trial began on August 18, 2003 and ended in a mistrial the following day. Williams's third jury trial began on October 27, 2003, and ended in a deadlocked jury on November 1, 2003.

A fourth jury trial commenced on January 12, 2004. During voir dire, the State used peremptory challenges to strike two potential jurors who were African–American. Williams objected based on *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial court overruled Williams's objection and upheld the peremptory challenges.

During the jury's deliberations, the jury sent the trial court a note asking: "If we find the defendant guilty of 'Murder in the

Perpetration of Robbery, a felony as to Count II' must we *also* fill out the verdict form for 'Robbery, a Class A felony, as to Count II'?" Appellant's App. p. 94 (emphasis in original). Without notifying Williams or the State, the trial court returned the note to the jury with the following response: "This question cannot be answered. The instructions and verdict forms are your best guidance." *Id.* The jury then found Williams guilty of murder, murder in the perpetration of a robbery, and robbery.

The trial court conducted a sentencing hearing on March 5, 2004. At that hearing, the trial court informed Williams and the State of the jury's question and the trial court's response. Williams objected to the trial court's contact with the jury outside the presence of counsel. The trial court vacated the robbery conviction, merged the conviction for murder in the perpetration of a robbery into the murder conviction, and sentenced Williams to fifty-eight years for murder. Williams now appeals. Additional facts will be provided as necessary.

### Discussion and Decision

#### I. *Batson* Challenge

■ Williams first asserts that the trial court erred in denying his claim that the State's use of a peremptory strike to exclude Mary James ("James") violated *Batson*. There are three steps to resolve a *Batson* claim in the trial court.

First, the party contesting the challenge must make out a prima facie case of racial discrimination by demonstrating that: "(1) the juror is a member of a cognizable racial group; (2) [the challenging party] has exercised peremptory challenges to remove that group's members from the jury; and (3) the facts and circumstances of this case raise an inference that the exclusion was based on race." Second, upon such a showing, the burden of production shifts to the proponent of the peremptory challenge to provide a race-neutral explanation. If the explanation, on its face, is based on something other than race, the explanation will be deemed race-neutral. Third, the trial court must determine whether the party contesting the peremptory challenge has proved purposeful racial discrimination.

*Forrest v. State*, 757 N.E.2d 1003, 1004 (Ind.2001) (alteration in original) (citations omitted).

■ We review a trial court's decision concerning whether a peremptory challenge is discriminatory with great deference, and will set aside the decision only if clearly erroneous. *Id.* (citing *McCants v. State*, 686 N.E.2d 1281, 1284 (Ind.1997)). The trial court's decision on the question of discriminatory intent constitutes a finding of fact which is accorded great deference on appeal because the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge. *Wright v. State*, 690 N.E.2d 1098, 1104–05 (Ind.1997) (citing *Hernandez v. New York*, 500 U.S. 352, 364–65, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)); *see also Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. 1712 (trial court's finding "largely will turn on evaluation of credibility [and should be given] great deference").

Here, the State sought to exclude from jury service two African–American women, both from Gary. Williams objected to the peremptory strikes on the basis of *Batson*, and the trial court asked for the State's response. The prosecutor explained his reasons for striking the first African–American woman, Ms. Hemphill. The peremptory strike of Ms. Hemphill is unchallenged in this appeal.

The prosecutor then turned his attention to James:

As far as Ms. James goes, I mean, I don't even know if she understood why she's here, quite frankly. I mean, I was very concerned about her wanting to inject her religious concerns into what she felt was her ability to sit. It just—I don't—I don't feel confident in listening to her answers that she can make a decision based upon the evidence and not injecting her personal feelings relative to her faith.... I just do not and cannot feel comfortable with putting her in a position to decide something as significant as that when she may be hesitant to ultimately make a decision one way or the other in terms of rendering a verdict. And I don't want to see, you know, a jury of twelve people with someone unable to decide as we move forward in the matter.

Tr. pp. 89–90.

The trial court then determined that the State's reasons for excluding James were race-neutral and observed,

Ms. James has indicated initially in her answers to questions that she did not want to sit because she did not want to pass judgment on another person given her faith. Later, during the course of questioning, she did indicate that if she were chosen, she would be a fair juror.

Tr. pp. 90–91.

■ On appeal, Williams argues that the State's race-neutral reason for striking James was her religious beliefs. He further argues that *Batson* should be extended to religion.[1] However, Williams did not raise this argument in the trial court. A defendant may not raise one ground for objection at trial and argue a different ground on appeal. *Howard v. State*, 818 N.E.2d 469, 477 (Ind.Ct.App.2004), *trans. denied.* The failure to raise an issue at trial waives the issue for appeal. *Id.*

■ Waiver notwithstanding, it is "proper to strike [a venireperson] on the basis of a belief that would prevent [her] from basing [her] decision on the evidence and instructions, even if the belief had a religious backing[.]" *U.S. v. Stafford*, 136 F.3d 1109, 1114 (7th Cir.1998) *modified on other grounds*, 136 F.3d 1115 (7th Cir., 1998). Here, the State's offered reason for the peremptory challenge was not James's religion, but rather her ability to be impartial and participate in deliberations.

The prosecutor responded to Williams's objection with a race-neutral reason for the peremptory challenge. It then "became the responsibility of the trial court to determine from all the circumstances whether the defendant had proved purposeful racial discrimination by the State." *Forrest*, 757 N.E.2d at 1005. Because we review the trial court's determination with great deference, we conclude that the trial court did not err in overruling Williams's objection and permitting the peremptory challenge to James.

## II. Jury Deliberations

Next, Williams contends that the trial court erred when it failed to inform him of the jury's request for information during deliberations. He argues that the trial court's ex parte communication with the jury violated both his constitutional right

---

1. The Supreme Court has not yet considered whether a peremptory strike based on religious affiliation violates the Constitution. *See Davis v. Minnesota*, 511 U.S. 1115, 114 S.Ct. 2120, 128 L.Ed.2d 679 (1994) (denying certiorari on this precise issue). State courts are split on the issue. *See generally*, Caroline R. Krivacka & Paul D. Krivacka, Annotation, *Use of Peremptory Challenges to Exclude Persons from Criminal Jury Based on Religious Affiliation*, 63 A.L.R. 5th 375, 1998 WL 1032133 (1998). Indiana courts have yet to squarely address the issue. *See Pryor v. Hoskins*, 774 N.E.2d 943, 955–56 (Ind.Ct.App.2002) (J. Sullivan, concurring).

to be present and Indiana Code section 34–36–1–6.

■ Our supreme court has outlined the proper procedure for trial courts to follow when a deliberating jury makes a request for additional guidance during its deliberations. The trial court should

> notify the parties so they may be present in court and informed of the court's proposed response to the jury before the judge ever communicates with the jury. When this procedure is not followed, it is an ex parte communication and such communications between the judge and the jury without informing the defendant are forbidden. However, although an ex parte communication creates a presumption of error, such presumption is rebuttable and does not constitute per se grounds for reversal. When a trial judge responds to the jury's request by denying it, any inference of prejudice is rebutted and any error deemed harmless.

*Pendergrass v. State*, 702 N.E.2d 716, 719–20 (Ind.1998) (quoting *Bouye v. State*, 699 N.E.2d 620, 628 (Ind.1998)) (citations omitted) (emphasis omitted).

■ Here, the trial court erred by communicating with the jury without notifying the parties. However, the court's response that the "instructions and verdict forms are your best guidance" was essentially a denial of the jury's request for clarification and therefore harmless error. *See id.* at 720 (citing *Allen v. State*, 686 N.E.2d 760, 782 (Ind.1997)). As in *Pendergrass*, "[t]he trial court's response in this case merely instructed the jurors to review the instructions already in their possession. The judge did not supplement those instructions or direct the jury's attention to any particular instruction. This response in no manner could have improperly influenced the jury." *Id.*

■ Williams also contends this ex parte communication violated Indiana Code section 34–36–1–6, which provides:

> If, after the jury retires for deliberation:
>
> (1) there is a disagreement among the jurors as to any part of the testimony; or
>
> (2) the jury desires to be informed as to any point of law arising in the case;
>
> the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

Ind.Code § 34–36–1–6 (1999).

The statute does not require the presence or notification of the parties or their counsel whenever the trial court responds to a jury request, but rather requires notice or presence when "information" is given to the jury. *Pendergrass*, 702 N.E.2d at 719. Here, the deliberating jury was not provided with any information. The statute was not violated.

### III. *Blakely v. Washington*

■ Finally, Williams argues that the trial court erred in imposing an aggravated sentence of fifty-eight years in light of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Specifically, he argues that the trial court improperly relied upon his prior criminal history, which consisted of two misdemeanor convictions, and his "violent and manipulative" character.

In *Blakely*, the United States Supreme Court held, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable

doubt."[2] 124 S.Ct. at 2536 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). "The 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* at 2537. The key to *Blakely* is whether the case involves "a sentence greater than what state law authorized on the basis of the verdict alone." *Id.* at 2538.

■ At the time of Williams's crime, Indiana Code section 35–50–2–3(a) (1998) provided: "A person who commits murder shall be imprisoned for a fixed term of fifty-five (55) years, with not more than ten (10) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances[.]" As noted above, Williams's murder sentence was enhanced from the presumptive term[3] of fifty-five years to a term of fifty-eight years. In imposing an enhanced sentence, the trial court specifically found as aggravating circumstances Williams's prior convictions and his "history of arrests and contacts with the criminal justice system[.]"[4] Appellant's App. p. 11.

■ As stated in *Blakely*, the trial court could rely on Williams's prior convictions without any additional findings by a jury. *See* 124 S.Ct. at 2536. Williams acknowledges this, but argues that his prior convictions for two misdemeanors are insufficient to support the enhancement of his sentence. Further, he urges this court to limit the *Blakely* prior conviction exception to convictions for felonies. However, a criminal history comprised entirely of misdemeanor convictions may be used to enhance a sentence under *Blakely*. *See McNew v. State*, 822 N.E.2d 1078, 1081 (Ind.Ct.App.2005).

■ While prior convictions may be considered to have significant weight, this is not necessarily so. *Waldon v. State*, 829 N.E.2d 168, 182 (Ind.Ct.App.2005) (citing *Westmoreland v. State*, 787 N.E.2d 1005, 1010 (Ind.Ct.App.2003)). The significance afforded to a defendant's criminal history depends upon the gravity, nature, and number of the prior offenses as they relate to the current offense. *See Ballard v. State*, 808 N.E.2d 729, 736 (Ind.Ct.App. 2004), *trans. granted, summarily aff'd in relevant part by* 812 N.E.2d 789 (Ind. 2004). Here, the trial court relied upon Williams's 1998 conviction for violation of a protective order in Cook County, Illinois and his 2000 conviction for public intoxication in Lake County, Indiana, both misdemeanors.

Since *Blakely* was decided, this court has held that prior misdemeanor convictions were insufficient aggravating factors to support substantially enhanced sen-

---

2. This case was fully briefed prior to our supreme court's decision in *Smylie v. State*, 823 N.E.2d 679 (Ind.2005) determining, *inter alia*, "that the new rule of *Blakely* should apply to all cases pending on direct review at the time *Blakely* was announced in which the appellant has adequately preserved appellate review of the sentence." 823 N.E.2d at 682.

3. Public Law 71–2005 abolished "presumptive sentences" and established "advisory sentences."

4. Williams makes no argument that the trial court improperly relied upon his "history of arrests" as an aggravating factor; rather, he focuses solely on the trial court's reliance on his prior convictions of two misdemeanors. However, we observe that prior arrests are an improper aggravator because they are not prior or convictions which have been found by a jury or admitted to by the defendant. *See Waldon v. State*, 829 N.E.2d at 181–82 (Ind. Ct.App.2005) (citing *Blakely*, 124 S.Ct. at 2536–37, 2541; *Abney v. State*, 822 N.E.2d 260 (Ind.Ct.App.2005), *trans. denied.*).

tences.[5] *See, e.g., Traylor v. State,* 817 N.E.2d 611, 622 (Ind.Ct.App.2004), *trans. denied* (single misdemeanor battery conviction insufficient to enhance A felony sentence by ten years and C felony sentence by two years). *See also Ruiz v. State,* 818 N.E.2d 927, 928–29 (Ind.2004) (based solely on state law grounds and not *Blakely,* criminal history of alcohol-related misdemeanors not significant aggravators to support maximum sentence for Class B felony child molestation).

Here, in relying upon Williams's prior misdemeanors, the trial court stated:

> the fact that you do have some criminal history, there has to be an aggravating sentence in some regard. Quite frankly, I don't think its to the extent that what [Williams's counsel] indicates, because you have no prior felony convictions. If you did, the situation would be different. But because I find that the aggravators that I've cited, which [are] your criminal history and your history of arrests and contacts with our criminal justice system, each [ ] one of those will outweigh any mitigation that I could ever find on your behalf. I'm going to sentence you to a term of 58 years in the Department of Correction[ ], that's three years above the presumptive sentence, quite frankly.

Sentencing Tr. pp. 32–33.

Thus, the trial court found Williams's prior convictions to be significant, and in weighing their significance, specifically acknowledged that if Williams had previously been convicted of a felony, "the situation would be different." Sentencing Tr. p. 32. The trial court then enhanced Williams's murder sentence by three out of a possible ten years. While we agree that two prior misdemeanor convictions would not support a maximum enhanced sentence, that is not the question facing us. Nor is this a situation in which the trial court relied primarily on invalid aggravators, but also relied upon an "insignificant" criminal history. *See, e.g., Patrick v. State,* 819 N.E.2d 840, 848 (Ind.Ct.App.2004), *trans. granted, aff'd in part, vacated in part by* 827 N.E.2d 30 (Ind.2005). Therefore, we conclude that under these facts and circumstances, Williams's prior misdemeanor convictions support the three-year enhancement of his murder sentence.

Williams also argues that the trial court improperly relied upon a finding that his character was manipulative and violent to enhance his sentence. At Williams's sentencing, the trial court discussed the nature and circumstances of the crime and Williams's character, specifically noting that his character was "manipulative and violent," but that he had been "extremely respectful" to the trial court. Appellant's App. p. 10; Sentencing Tr. p. 31.

■ Our review of both the sentencing transcript and the trial court's sentencing order indicates that the trial court clearly

---

**5.** Several cases issued prior to *Blakely* also determined that prior misdemeanor convictions were insignificant aggravators. *See Ballard,* 808 N.E.2d at 736 (criminal history comprised of unrelated misdemeanors not significant in context of sentencing for voluntary manslaughter); *Newsome v. State,* 797 N.E.2d 293, 300 (Ind.Ct.App.2003), *trans. denied* (stating that a criminal history that consisted of three fairly recent misdemeanor convictions, two of which were for battery, would not be sufficient, standing alone, to enhance a defendant's sentence); *Westmoreland v. State,* 787 N.E.2d 1005, 1010 (Ind.Ct.App.2003) (concluding that "a criminal history comprised of misdemeanors that are unrelated to the present offense are not significant aggravators in the context of a sentencing hearing for criminal deviate conduct."); *Watson v. State,* 784 N.E.2d 515, 523 (Ind.Ct.App.2003) (holding "a criminal history comprised of two, nonviolent misdemeanors that are unrelated to the present offense are not significant aggravators in the context of a sentencing hearing for battery.").

relied entirely upon Williams's criminal history and history of contact with the criminal justice system to enhance his sentence. *See* Sentencing Tr. p. 32; Appellant's App. p. 11. The trial court's other comments were merely a discussion of the character of the offender and the nature and circumstances of the crime. *See* Ind. Code section 35–38–1–7.1(a) (2004).[6] In addition, we note that "a single aggravating circumstance is adequate to justify a sentence enhancement." *Carson v. State*, 813 N.E.2d 1187, 1189 (Ind.Ct.App.2004) (citing *Powell v. State*, 769 N.E.2d 1128, 1135 (Ind.2002)). Because the trial court properly relied upon Williams's prior misdemeanor convictions, his sentence does not run afoul of *Blakely*.

### Conclusion

The trial court did not err in upholding the State's peremptory challenge. The trial court's ex parte communication with the jury was harmless error, and Williams's sentence does not violate his Sixth Amendment rights under *Blakely*.

Affirmed.

DARDEN, J., and CRONE, J., concur.

---

**6.** Amended by Public Law 71–2005, Sec. 3.