Opinion filed August 13, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed August 13,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-08-00140-CR 

                                                    __________

 

                                JEFFERY EUGENE KEITH, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 385th District Court

 

                                                        Midland
County, Texas

 

                                                 Trial
Court Cause No. CR31910

 



 

                                                                   O
P I N I O N

 

 The
jury convicted Jeffery Eugene Keith of murder and arson, and it assessed his
punishment at confinement for life for each offense.  We affirm.

                                                             I. 
Background Facts

 Keith
was indicted for murdering his mother, Carolyn Keith, and then attempting to
cover up the murder by setting fire to her house.  Keith does not challenge the
sufficiency of the evidence to support these convictions and, therefore, the
facts of the crimes will not be summarized.  Instead, Keith complains of two
procedural rulings.  








Keith=s counsel filed a motion to
have him examined by an expert witness to determine his competency to stand
trial.  The trial court appointed a medical doctor to evaluate Keith. 
Following a competency hearing, the trial court found that Keith was
incompetent to stand trial and committed him to a mental health facility. 
Keith stayed in the facility for approximately one and one-half years. 
Personnel in the facility informed the trial court that Keith was now competent
to stand trial, and the trial court entered an order restoring his competency.

Prior
to trial, Keith objected to being publicly shackled during trial, and the trial
court conducted an evidentiary hearing.  The trial court overruled Keith=s objection, and he was
visibly restrained during trial with handcuffs, a belly chain, and leg
shackles.  At trial, Keith objected to the State=s
exercise of peremptory challenges on four African-American veniremembers.  The
trial court denied Keith=s
motion, and the trial proceeded.  The jury found Keith guilty of murder and
arson, found that two enhancement paragraphs were true, and assessed his
punishment at confinement for life for each offense.

                                                                       II. 
Issues

Keith
challenges his conviction with two issues, contending that he was deprived of a
fair trial because of the use of visible restraints and that the State
improperly struck two African-American veniremembers.

                                                             III. 
Visible Restraints

Keith
argues that the trial court erred by denying his objection to the use of
visible restraints because the presumption of innocence was unduly
compromised.  The decision to use physical
restraints must be made by the trial court on a case-by-case basis, and the use
of such restraints will necessitate reversal only where the decision
constitutes an abuse of discretion and results in harm. Cooks v. State,
844 S.W.2d 697, 722 (Tex. Crim. App. 1992).  The test for abuse of discretion is
whether the trial court=s
decision was outside the zone of reasonable disagreement.  Landers v. State,
256 S.W.3d 295, 303 (Tex. Crim. App. 2008); Apolinar v. State, 155
S.W.3d 184, 186 (Tex. Crim. App. 2005).








Physically
restraining or shackling a defendant in front of the jury infringes upon the
constitutional presumption of innocence.  Deck v. Missouri, 544 U.S.
622, 630-31 (2005).  To avoid compromising this right, a trial court may only
shackle a defendant in exceptional circumstances, and it must clearly and
affirmatively detail those circumstances.  Long v. State, 823 S.W.2d
259, 282 (Tex. Crim. App. 1991).  Examples of exceptional circumstances
warranting shackling include situations in which the accused has a history of
escape, expressed an intent to escape, threatened physical violence, assaulted
persons in the courtroom, and repeatedly interrupted court proceedings.  Gammage
v. State, 630 S.W.2d 309, 313-14 (Tex. App.CSan
Antonio 1982, pet. ref=d). 
Trial courts must proceed with great caution whenever the exceptional
circumstances are based on conduct occurring outside the courtroom.  Id. at
315.

The
trial court made several findings in support of its ruling.  The court found
that Keith had previously assaulted two deputy sheriffs, had kicked the windows
out of a jail van, had been convicted of retaliation for threatening two peace
officers, had been convicted of unlawfully carrying a weapon on licensed
premises, had been convicted of aggravated assault, and had been involved in
fights with other inmates over card games while incarcerated awaiting trial. 
The trial court also found that the other inmates were afraid to turn their
back to Keith, that jail personnel had preempted further violence while
awaiting trial by maintaining Keith in a high risk to super max classification
and by bribing him to take his medication with extra food, that Keith was
six-foot-six to six-foot-seven and weighed approximately 300 pounds, that it
took multiple officers to subdue Keith when he became violent, and that
pressure points were ineffective on him.  The trial court expressed concern
over the possibility of a violent outburst in light of Keith=s unstable mental history
and the upsetting photographic evidence of his murdered mother.

Keith
does not challenge the factual sufficiency of any of these findings but asserts
that they are insufficient to justify the use of physical restraints.  Keith
argues that physical restraints are appropriate only as a last resort and notes
that much of the conduct upon which the trial court relied occurred years
before trial.  Keith observes, for example, that the assaults on the two deputy
sheriffs and kicking the window out of a jail van occurred in the mid-90s, that
the aggravated assault conviction occurred in 1999, and that the unlawfully
carrying a weapon conviction occurred in 2002. Keith also argues that a higher
standard is applicable when the questioned conduct occurs outside the courtroom
and points out that there was no evidence of violent behavior in the
courtroom.  Finally, Keith suggests less drastic security measures, such as a
stun belt, should have been considered.








The
trial court did not abuse its discretion.  While some of Keith=s conduct occurred years
before trial, it was part of a pattern of behavior that continued through his
detention awaiting trial.  The trial court also had considerable evidence of
Keith=s mental or
emotional issues, knew that this  could be an emotional trial, and knew the
extraordinary measures the sheriff=s
office was using to keep Keith medicated and to prevent him from injuring
others.  There was no evidence that Midland County had a stun belt or other
form of restraint sufficient to control Keith.  The trial court did consider a
leg brace, but the county did not have one that fit Keith.  Finally, we note
that the trial court took steps to limit the prejudicial effect of Keith=s physical restraints. 
Keith was not required to stand, and he was given the choice to be seated
before the jury panel entered the room to prevent calling attention to the
restraints.  Issue One is overruled.

                                                             IV.
Batson Challenge 

Keith
objected to the State=s
use of four peremptory strikes on African-American veniremembers pursuant to Batson
v. Kentucky, 476 U.S. 79 (1986), and Tex.
Code Crim. Proc. Ann. art. 35.261 (Vernon 2006).  The State
provided reasons for its strikes, including the fact that two listed their
religious affiliation as Pentecostal.  Keith objected, contending that Areligious affiliation is
[not] a good race neutral reason.@ 
The trial court denied Keith=s
Batson challenges. Keith contends on appeal that the trial court erred
as to the two Pentecostal veniremembers because the State failed to offer a
racially neutral reason.

When
reviewing a Batson challenge, the record is examined in the light most
favorable to the trial court=s
ruling.  See Keeton v. State, 749 S.W.2d 861, 870 (Tex. Crim. App.
1988).  The trial court=s
ruling will only be reversed when it is clearly erroneous.  See Esteves v.
State, 849 S.W.2d 822, 823 (Tex. Crim. App. 1993).  A ruling is clearly
erroneous when, after searching the record, we are left with the Adefinite and firm
conviction that a mistake has been committed.@ 
Hill v. State, 827 S.W.2d 860, 865 (Tex. Crim. App. 1992).








In
Purkett v. Elem, 514 U.S. 765 (1995), the Supreme Court delineated the
three-step process for properly determining a Batson challenge.  First,
the opponent of a peremptory challenge must make out a prima facie case of
racial discrimination, essentially a burden of production.  In the second step,
the burden of production shifts to the proponent of the strike to respond with
a race-neutral explanation.  Third, if a race-neutral explanation has been
proffered, the trial court must decide whether the opponent of the strike has
proved purposeful racial discrimination.  The burden of persuasion is on the
opponent of the strike to convince the trial court that the strike was racially
motivated.  Id. at 767-68.

Keith=s challenge focuses on the
second step of this analysis.  Keith does not contend that the State=s reasons were pretextual,
and the record indicates that the State struck all Pentecostal veniremembers,
including one non-African-American.  Nor is Keith trying to expand Batson=s scope in the traditional
sense by arguing that religious affiliation should receive the same protection
as racial identity.  His argument is not predicated upon his own religious
affiliation, and he makes no complaint of the strike exercised on the non-African-American
Pentecostal veniremember.  Instead, Keith=s
position is that religious affiliation is not a racially neutral reason and,
therefore, that the State did not satisfy its burden of production with regard to
the two African-American Pentecostal veniremembers.

The
Texas Court of Criminal Appeals has held that the use of religious affiliation
is a permissible basis to strike a veniremember.  Casarez v. State, 913
S.W.2d 468 (Tex. Crim. App. 1995).  Keith acknowledges this, but maintains that
an emerging consensus exists for the proposition that exercising peremptory
challenges based solely upon religious affiliation is unconstitutional.[1]
Rather, Keith suggests, the State must rely upon a veniremember=s religious beliefs,
and he contends that Casarez supports this conclusion because the
prosecutor in that case argued that he struck the Pentecostal veniremembers due
to his experience with them having trouble passing judgment on others.








We
do not have the prerogative to overturn or modify Casarez.  Moreover, we
do not believe that this case squarely presents the issue Keith advances
because the State did not rely entirely upon the veniremembers= religious affiliation. 
One of the two was familiar with a potential defense witness, and the State
indicated that it was concerned about her temperament. This individual listed
herself as the person she admired most and the Adevil,
devil, devil@ as the
person she admired the least.  The second was Keith=s former coach.  There is no claim that these
are not racially neutral reasons.  Because they would justify the use of a
peremptory strike, even if the veniremembers=
religious affiliation is not a racially neutral reason, no harm is shown. 

Keith
alternatively argues that the use of religious preference violates the equal
rights and religious freedom provisions of the Texas Constitution.  Tex. Const. art. I, '' 3a, 4.  This issue was not
raised below and, therefore, is not properly before us.  But even if it were,
because the State had racially neutral reasons in addition to the veniremembers= religious affiliation, no
harm is shown.  Issue Two is overruled.

                                                         V. 
Holding 

The
judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

August 13, 2009

Publish.  See
Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









     [1]Keith cites
decisions such as Highler v. State, 834 N.E.2d 182, 196 (Ind. Ct. App.
2005), aff=d in part, 854
N.E.2d 283 (Ind. 2006); State v. Fuller, 862 A.2d 1130 (N.J. 2004); United
States v. Brown, 352 F.3d 654, 668 (2d Cir. 2003); State v. Purcell,
18 P.3d 113 (Ariz. Ct. App. 2001, review denied); United States v. Stafford,
136 F.3d 1109 (7th Cir. 1998); and United States v. Somerstein, 959 F.
Supp. 592 (E.D. N.Y. 1997), in support of this contention.