No. 2--01--1307
 

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

LAURA LAWLER and RONALD LAWLER, ) Appeal from the Circuit

) Court of Du Page County.

Plaintiffs-Appellees,
 )

)

) No. 99--L--555

)

ROGER MACDUFF; KEVIN JONES;
 ) 

ELMHURST CLINIC; ELMHURST ) 

MEMORIAL HEALTH SYSTEMS, d/b/a ) 

Elmhurst Clinic;
 ELMHURST
 )

MEMORIAL HOSPITAL;
 EMH
 REFERENCE 
 )

LABORATORY;
 FRED SCHMITT;
 and
 )

INDRA
 SHANKAR
,
 )

)

Defendants )

) 

(Michael Lomont and Associated
 ) Honorable

Pathology
 Consultants-Gottlieb,
 ) Hollis L. Webster,

S.C., Defendants-Appellants
). ) Judge, Presiding.

JUSTICE GROMETER delivered the opinion of the court:

Defendants Michael Lomont and 
Associated Pathology Consultants-Gottlieb, S.C.,
 
appeal a judgment of the circuit court of Du Page County entered in favor of plaintiffs, Laura and Ronald Lawler.  Following a jury trial, Laura was awarded $3,800,000 and Ronald was awarded $50,000.  On appeal defendants seek a new trial or, in the alternative, a remittitur.  For the reasons that follow, we affirm.

The instant appeal arises out of a medical negligence action.  Plaintiffs alleged that defendants had failed to properly read Laura's Pap smears.  As a result, Laura contracted cancer and was subsequently forced to undergo a hysterectomy.  Defendants conceded liability, and a jury trial was held solely on the issue of damages.  At the time of the trial, only Dr. Lomont and 
Associated Pathology Consultants-Gottlieb, S.C.,
 remained as defendants.  The jury awarded Laura $2,500,000 for pain and suffering, $1,200,000 for the loss of a normal life, and $100,000 for disfigurement.  It also awarded Ronald $50,000 on his loss-of-consortium claim.  Relevant facts will be discussed as they pertain to the issues that follow.

I. OPINION

Defendants raise six issues in this appeal.  First, they contend plaintiffs violated Supreme Court Rule 213 (177 Ill. 2d R. 213) by failing to properly disclose an opinion of one of their experts.  Second, they assert that the trial court erred by failing to instruct the jury regarding the burden of proof.  Third, they argue that the trial court improperly permitted plaintiffs to exercise a peremptory challenge to prevent an elderly juror from being empaneled.  Fourth, they complain that plaintiffs improperly indoctrinated the jury during 
voir dire
.  Fifth, they allege error because the trial court permitted an expert witness to testify when the expert witness could not fully identify how he was to be compensated for his testimony.  Sixth, they claim that they are entitled to a remittitur because Laura failed to prove damages for the loss of a normal life.  We will address these issues 
seriatim
.

A. Violation of Supreme Court Rule 213

Defendants first contend that the trial court erred in permitting Dr. Cook, one of plaintiffs' expert witnesses, to give an opinion that, defendants claim, was not disclosed as required by Supreme Court Rule 213 (177 Ill. 2d R. 213).  Supreme Court Rule 213 requires parties to disclose "the conclusions and opinions of [an] opinion witness and the bases therefor."  177 Ill. 2d R. 213(g).  It is permissible for a witness to elaborate on a properly disclosed opinion.  
Becht v. Palac
, 317 Ill. App. 3d 1026, 1037 (2000).  Furthermore, that trial testimony is more precise than a disclosed opinion does not necessarily result in a violation.  
Prairie v. Snow Valley Health Resources, Inc.
, 324 Ill. App. 3d 568, 576 (2001).  Whether an opinion has been adequately disclosed is a matter that lies within the discretion of the trial court.  
Department of Transportation v. Crull
, 294 Ill. App. 3d 531, 537 (1998).  We will overturn a trial court's exercise of discretion only where no reasonable person could agree with the position that it takes.  
Nasrallah v. Davilla
, 326 Ill. App. 3d 1036, 1042 (2001).

Through a videotaped evidence deposition, Dr. Ronald Potkul testified regarding the Delgado scoring system.  The Delgado system is used to predict the chances of the recurrence of cancer in victims such as Laura.  Using this system, Dr. Potkul testified that Laura had an 85% chance of surviving five years.  At trial, Dr. Cook criticized the Delgado system because it fails to take into account vascular and lymphatic invasion.  Defendants contend that this criticism was not disclosed.  We disagree.

In response to defendants' Rules 213(f) and (g) (177 Ill. 2d Rs. 213(f),(g)) interrogatories, plaintiffs stated that it was anticipated that Dr. Cook would testify to the following:

"[A]ll women who suffer from invasive squamous cell cancer of the cervix face risk 
of cancer recurrence.  Frequently these cancers will occur within two years of initial diagnosis, and that [
sic
] therefore the lack of recurrence in Laura Lawler can be considered a good sign.  However, such cancers can recur or metastasize subsequent to two years or even five years.  This is particularly true in the case of Laura Lawler because of the size of the lesion and the fact that there was lymphatic and vascular invasion.  Although methods and systems exist that purport to predict chances of recurrence, these methods and systems are not statistically reliable and are limited to five-year survival rates."

Defendants claim that, although they anticipated that Dr. Cook would criticize the Delgado system based on the fact that it was limited to a five-year period, they could not have anticipated that he would criticize the system for failing to take into account vascular and lymphatic invasion.

Defendants' position is untenable.  Plaintiffs' Rule 213 disclosure clearly states that cancers such as Laura experienced can recur beyond five years.  It goes on to elaborate that this is particularly true in her case "because of the size of the lesion and the fact that there was lymphatic and vascular invasion."  The passage concludes that statistical systems are not reliable and are limited to five-year periods.  These concepts appear in consecutive sentences; the nexus between them is clear.  A very reasonable reading of this passage is that statistical systems, like the Delgado system, are unreliable in cases, like Laura's, where there is lymphatic and vascular invasion.  A reasonable person could agree with this very reasonable interpretation.  Since a trial court abuses its discretion only where no reasonable person could agree with the position it takes (
Nasrallah
, 326 Ill. App. 3d at 1042), no abuse of discretion occurred here.  Since we conclude that the trial court did not err in allowing this testimony, we need not address defendants' contention that the testimony was prejudicial to them.

B. Instructing the Jury on the Burden of Proof

Defendants next argue that the trial court erred in failing to instruct the jury as to the burden of proof.  The trial court used a pattern jury instruction  stating the following: "The defendants have admitted liability for any injury which may have proximately resulted from the occurrence.  You need only decide what injuries to the plaintiffs resulted from this occurrence and fairly compensate the plaintiffs for those injuries."  See Illinois Pattern Jury Instructions, Civil, No. 23.01 (2000).  Defendants astutely observe that this instruction does not state that the plaintiff bears the burden of proving what is at issue in the trial.  The trial court concluded that it was proper to give the instruction without a burden of proof instruction and that, in any event, defendants waived the issue by failing to tender what they deemed to be a correct instruction prior to the time the jury was instructed.  We apply the abuse-of-discretion standard to alleged errors in jury instructions.  
In re Timothy H.
, 301 Ill. App. 3d 1008, 1015 (1998).

Defendants did not, in fact, tender a proposed instruction until after the parties had completed closing arguments and the jury had retired to deliberate.  It has been stated that a party waives any objection to a jury instruction by failing to object to it at the instruction conference.  
Branum v. Slezak Construction Co.
, 289 Ill. App. 3d 948, 956-57 (1997).  However, we need not decide whether tendering an instruction at this belated time constitutes waiver, for we conclude that the instruction tendered by defendants was erroneous.

On appeal, defendants argue that the trial court should have instructed the jury that plaintiffs bore the burden of proving "what injuries to the plaintiffs resulted from this occurrence."  At trial, however, they proposed a somewhat different instruction.  Defense counsel requested that the jury be given the following instruction: "The plaintiff has the burden of proving the following proposition, that the plaintiffs were injured."  These propositions are not the same.  At trial, defendant requested an instruction stating plaintiffs were required to prove 
that they were injured
; here, they argue for an instruction stating plaintiffs were required to prove 
in what manner they were injured
.  That these propositions are not identical is easy to see.  Regarding the former, if the jury concluded plaintiffs failed to sustain their burden of proof, an award of zero dollars would be appropriate.  In the latter case, plaintiffs would be entitled to something, since this instruction reflects the fact that plaintiffs were injured.

Our review is limited to the instruction proposed at trial.  In order to preserve an objection to the failure to give a jury instruction, the complaining party "must provide the reviewing court with the content of the instruction conference establishing that the appellant there raised the argument that he advances on appeal."  
Brown v. Decatur Memorial Hospital
, 83 Ill. 2d 344, 350 (1980).  Further, "[a] party is not permitted to appeal his overruled objection to an erroneous jury instruction when he fails to tender an alternate one which he contends on appeal, but failed to argue in the trial court, presents the proper statement of the law."  
Auton v. Logan Landfill, Inc.
, 105 Ill. 2d 537, 549 (1984).  Thus, a party must have presented to the trial court the instruction argued for on appeal.  Accordingly, our review is limited to the instruction presented to the trial court, and any reliance on the other instruction is waived.

That plaintiffs had the burden of proving that they were injured is an incorrect statement of law.  Defendants admitted liability.  The instant action involved medical negligence.  The elements of a medical negligence claim are "(1) the standard of care in the medical community by which the physician's treatment was measured; (2) that the physician deviated from the standard of care; and (3) that a resulting injury was proximately caused by the deviation from the standard of care."  
Neade v. Portes
, 193 Ill. 2d 433, 443-44 (2000).  Thus, by admitting liability, defendants admitted that an injury occurred.  While it is true that they did not admit the nature and extent of the injuries plaintiffs suffered, their proposed instruction did not reflect the fact that they had not admitted the types of injuries suffered by plaintiffs.  Rather, it raised the question of whether plaintiffs were injured at all.  Hence, the instruction was not an accurate statement of the law as to what plaintiffs were required to prove, and the trial court did not abuse its discretion by declining to give it.

C. 
Batson
, Age Discrimination, and 
Voir Dire

Defendants' third contention is that the trial court erred in allowing plaintiffs to strike a potential juror because of his age.  During 
voir dire
, plaintiffs exercised a peremptory challenge to remove a 77-year-old man from the jury.  Defendants objected, and the trial court required plaintiffs to articulate a nondiscriminatory reason for doing so.  Initially, we note that immediately requiring plaintiffs to explain their decision was improper.  Under 
Batson
, the party opposing the challenge must first make out a 
prima facie
 case of purposeful discrimination before the burden shifts to the party exercising the peremptory challenge to articulate a nondiscriminatory explanation for the strike.  
Batson v. Kentucky
, 476 U.S. 79, 97, 90 L. Ed. 2d 69, 88, 106 S. Ct. 1712, 1723 (1986).  However, where the party exercising the peremptory challenge offers an explanation for the strike, the question of whether the opposing party established a 
prima facie
 case becomes moot, and the inquiry turns solely on whether the trial court's ruling was proper.  
People v. Smith
, 258 Ill. App. 3d 1003, 1024 (1994).

Before turning to the issue of whether the trial court properly determined that plaintiffs' exercise of this peremptory challenge was done without an intent to discriminate on the basis of age, we are faced with a threshold question.  We must first decide whether 
Batson
 and its progeny forbid age discrimination during 
voir dire
.  This question is one of law, which we will review 
de novo
.  
Schmidt v. Ameritech Illinois
, 329 Ill. App. 3d 1020, 1027 (2002).

In 
Batson
, the Supreme Court set forth a procedure to enforce the equal protection clause's prohibition against the exercise of peremptory challenges solely on the basis of the race of a potential juror.  
Batson
, 476 U.S. at 89, 90 L. Ed. 2d at 83, 106 S. Ct. at 1719.  The prohibition against the discriminatory use of peremptory challenges was extended to gender-based strikes in 
J.E.B. v. Alabama ex rel. T.B.
, 511 U.S. 127, 129, 128 L. Ed. 2d 89, 97, 114 S.Ct. 1419, 1421 (1994).  In 
J.E.B.
, the court also limited the reach of 
Batson
 and its progeny, holding, "Parties may also exercise their peremptory challenges to remove from the venire any group or class of individuals normally subject to 'rational basis' review. [Citations.]"  
J.E.B.
, 511 U.S. at 143, 128 L. Ed. 2d at 106, 114 S. Ct. at 1429.

Thus, 
Batson
 applies in the present case only if the aged constitute a protected class, subject to some form of heightened scrutiny, for the purpose of the equal protection clause (U.S. Const., amend. XIV).  The Supreme Court squarely confronted this question in 
Massachusetts Board of Retirement v. Murgia
, 427 U.S. 307, 49 L. Ed. 2d 520, 96 S. Ct. 2562 (1976), where it was called upon to determine the constitutionality of a mandatory retirement law.  In that case, the court observed:

"While the treatment of the aged in this Nation has not been wholly free of discrimination, such persons, unlike, say, those who have been discriminated against on the basis of race or national origin, have not experienced a 'history of purposeful unequal treatment' or been subject to unique disabilities on the basis of stereotyped characteristics not truly indicative of their abilities."  
Massachusetts Board of Retirement
, 427 U.S. at 313, 49 L. Ed. 2d at 525, 96 S. Ct. at 2567.

The Court went on to note that "even old age does not define a 'discrete and insular' group [citation] in need of 'extraordinary protection from the majoritarian political process.' "  
Massachusetts Board of Retirement
, 427 U.S. at 313, 49 L. Ed. 2d at 525, 96 S. Ct. at 2567.  The Court then analyzed the mandatory retirement law using the rational-basis standard.  
Massachusetts Board of Retirement
, 427 U.S. at 314-17, 49 L. Ed. 2d at 525-27, 96 S. Ct. at 2567-69; see also 
Gregory v. Ashcroft
, 501 U.S. 452, 470, 115 L. Ed. 2d 410, 430, 111 S. Ct. 2395, 2406 (1991).  

In Illinois, we apply the same standard for assessing alleged equal protection violations under both the Illinois and United States Constitutions.  
In re Petition for Detachment of Land from Morrison Community Hospital District
, 318 Ill. App. 3d 922, 928 (2000).  Accordingly, our supreme court has held that age is not a protected characteristic.  
People v. M.A.
, 124 Ill. 2d 135, 140 (1988). 
 In 
People v. Reed
, 148 Ill. 2d 1, 8 (1992)
, the court, citing 
Massachusetts Board of Retirement
, held, "It is clear that the rational basis standard applies to classifications based on age."  Thus, under neither state nor federal law are the aged a class to which heightened scrutiny applies.  Given the 
J.E.B.
 holding that a party may strike "any group or class of individuals normally subject to 'rational basis' review" (
J.E.B.
, 511 U.S. at 143, 128 L. Ed. 2d at 106, 114 S. Ct. at 1429), it is apparent that 
Batson
 does not prohibit a party from exercising a peremptory challenge based upon the age of a potential juror.  A number of other jurisdictions that have considered this question have come to a like result.  See
 
Weber v. Strippit, Inc.
, 186 F.3d 907, 911 (8th Cir. 1999); 
United States v. Maxwell
, 160 F.3d 1071, 1075-76 (6th Cir. 1998); 
United States v. Grimmond
, 137 F.3d 823, 834 (4th Cir. 1998); 
United States v. Jackson
, 983 F.2d 757, 762 (7th Cir. 1993); 
Price v. State
, 725 N.E.2d 82, 87 (Ind. 2000); 
State v. Everett
, 472 N.W.2d 864, 869 (Minn. 1991).

In fact, our brethren in the Third District
 addressed the subject of age discrimination in jury selection in 
People v. McGaughy
, 313 Ill. App. 3d 656 (2000).  In that case, when called upon to provide a race-neutral explanation for a peremptory challenge used to remove an African-American venire member from the jury, the prosecutor stated that he was concerned about empaneling young jurors. Noting that age is not a suspect classification subject to heightened scrutiny, the Third District declined to extend 
Batson
 to age-based peremptory challenges.  
McGaughy
, 313 Ill. App. 3d at 658.  Other Illinois cases have found age to be an acceptable race-neutral explanation for striking a juror.  See 
People v. Mack
, 128 Ill. 2d 231, 242-43 (1989); 
People v. Hemphill
, 230 Ill. App. 3d 453, 467 (1992).

Defendants attempt to distinguish these Illinois cases, pointing out that they involve peremptory challenges based on youth, while the present case involves a challenge based on advanced age.  We find defendants' attempt unpersuasive; the equal protection clause does not function in this manner.  
J.E.B.
 forbids removing a prospective juror based on gender, regardless of whether the individual is male or female.  
J.E.B.
, 511 U.S. at 146, 128 L. Ed. 2d at 107, 114 S. Ct. at 1430.  Similarly, a 
Batson
 challenge to a strike based on the race of a venire person may be raised regardless of the race of the individual.  
People v. Rivera
, 307 Ill. App. 3d 821, 829 (1999) (observing that "the race-based exclusion of jurors of any race, including whites, offends the constitutional protections afforded by 
Batson
 and its progeny").  It would thus be anomalous to conclude that the equal protection clause protects those of advanced age while leaving youth unprotected.

Moreover, defendants' attempt to distinguish the elderly from the young highlights why age is not a protected characteristic.  Defendants assert that, unlike race or gender, "age is not an 'either-or' proposition."  Defendants are correct.  Old age "marks a stage that each of us will reach if we live out our normal span."  
Massachusetts Board of Retirement
, 427 U.S. at 313-14, 49 L. Ed. 2d at 525, 96 S. Ct. at 2567.  In other words, age is not an immutable characteristic.  Generally, protected status has been applied to classifications based on such characteristics.  See 
Johnson v. Robison
, 415 U.S. 361, 375 n.14, 39 L. Ed. 2d 389, 402 n.14, 94 S. Ct. 1160, 1169 n.14 (1974) ("With respect to appellee's second contention, we find the traditional indicia of suspectedness lacking in this case. The class does not possess an 'immutable characteristic determined solely by the accident of birth.' [Citation]").  Age, the Supreme Court held, is not "sufficiently akin to those classifications that we have found suspect to call for strict judicial scrutiny."  
Massachusetts Board of Retirement
, 427 U.S. at 314, 49 L. Ed. 2d at 525, 96 S. Ct. at 2567.

Therefore, we conclude that 
Batson
 and its progeny do not forbid the exercise of a peremptory challenge based upon the age of a prospective juror.  In the course of making this argument, defendants call our attention to some additional case law that we find unpersuasive
.  Defendants point to a number of cases that have extended 
Batson
 to strikes based upon a potential juror's religion.  See, 
e.g.
,
 
United States v. Somerstein
, 959 F. Supp. 592, 595 (1997); 
State v. Purcell
, 199 Ariz. 319, 326-27, 18 P.3d 113, 120-21 (2001).  Religion, however, is a classification arguably entitled to some form of heightened scrutiny.  See 
Davis v. Minnesota
, 511 U.S. 1115, 1115, 128 L. Ed. 2d 679, 679, 114 S. Ct. 2120, 2121 (1994) (Thomas, J., dissenting from denial of 
certiorari
); 
Purcell
, 199 Ariz. at 326-27, 18 P.3d at 120-21.  
People v. Garcia
, 77 Cal. App. 4th 1269, 1275, 92 Cal. Rptr. 2d 339, 343 (2000), which extended 
Batson
-like protections to strikes based on sexual orientation, was based on state law.  In 
People v. Green
, 148 Misc. 2d 666, 668-69, 561 N.Y.S.2d 130, 132-33 (1990), a New York court, acknowledging statutory protections afforded disabled persons, concluded that a prosecutor's removal of a hearing-impaired person lacked a rational basis.  The 
Green
 court observed that the challenge was based solely on the potential juror's disability rather than on any doubt as to the juror's ability to communicate.
  In the instant case, plaintiffs did not merely cite the potential juror's age; they articulated doubts regarding his ability to be an effective juror.  Moreover, we question the soundness of the 
Green
 court's analysis, the logical extension of which would subject virtually every strike to scrutiny, as any classification warrants at least rational-basis review.

We, like the Sixth Circuit, "recognize the import of the venerable right to exercise peremptory challenges."  
Maxwell
, 160 F.3d at 1076.  Further, we agree with that court's observation that "[t]he practice of allowing peremptory challenges may be overridden only for the strongest constitutional reasons."  
Maxwell
, 160 F.3d at 1076.  A classification that is not subject to some form of heightened scrutiny provides no such strong reason.  See 
J.E.B.
, 511 U.S. at 143, 128 L. Ed. 2d at 106, 114 S.Ct. at 1429.  Accordingly, we find no basis for disturbing the judgment of the court below.

D. Indoctrinating the Jury

Defendants next assert that plaintiffs' counsel improperly indoctrinated the jury during 
voir dire
.  Specifically, defendants complain that plaintiffs asked Margaret Socco the following question:

"Well, do you have any disagreement with our system of law that would allow us to bring a case like this against a doctor who has admitted neglect."

Defendants objected, stating that they had not admitted "neglect."  On appeal, defendants point out that, while it is true that they admitted to liability, "neglect" has a pejorative connotation that "negligence" lacks.  According to defendants, "neglect" encompasses intentional, as well as unintentional, wrongdoing.  See Black's Law Dictionary 1032 (6th ed. 1990).  Defendants have waived this argument by failing to interpose a timely objection.

Prior to the questioning of Ms. Socco, plaintiffs' counsel used the term "neglect" in questioning at least two other potential jurors.  Defendants did not object to these questions.  It is a common proposition that a party waives any claim to the admission of evidence if he fails to object whenever similar evidence is offered.  
Gillespie v. Chrysler Motors Corp.
, 135 Ill. 2d 363, 374 (1990) ("Even if a party objects to certain evidence, if he fails to object to similar evidence that the trial court admitted without objection, he waives any claim that the evidence to which he did object was admitted erroneously").  The First District has recently applied this rule to the failure to interpose timely objections to questions posed during 
voir dire
.  
Rub v. Consolidated Rail Corp.
, 331 Ill. App. 3d 692, 705 (2002).  We agree with the First District.  Where, as here, a party objects to a question but, at other times, fails to object to substantially similar questions, the objection is insufficient to preserve the issue for review.

E. Cross-examination and Financial Bias

Defendants also argue that the trial court erred in permitting one of plaintiffs' experts to testify without identifying his rate of compensation.  During cross-examination, Dr. Cook acknowledged that he received $500 per hour for reviewing materials and being deposed.  However, when asked what he was charging for his appearance at trial, Dr. Cook replied that the figure had not yet been calculated.  He explained that he bases his fees for testifying on the amount earned from other sources during the week in which he testifies.  The doctor did state that his fees would not exceed $5,000 for the day.  Defendants now complain that, because Dr. Cook did not provide a more detailed answer, the jury was deprived of a significant piece of information bearing upon his credibility.  Thus, defendants assert, he should not have been allowed to testify.  The decision to admit expert testimony lies within the sound discretion of the trial court, and its decision will not be disturbed absent an abuse of that discretion.  
People v. Thill
, 297 Ill. App. 3d 7, 11 (1998).

We doubt that the absent information defendants seek would have even been relevant on the issue of bias.  Clearly, for a witness to be biased by a fact, the witness must be aware of the fact.  See 
People v. Ware
, 96 Ill. App. 3d 923, 927 (1981) ("Any testimony concerning whether [the witness] was aware of her possible eligibility [to file a claim under the Illinois Crime Victim's Compensation Act (Ill. Rev. Stat. 1977, ch. 70, par. 71 
et seq
.)] would have been speculative and uncertain evidence of bias and was therefore properly excluded by the trial court").  It is apparent from Dr. Cook's testimony that he was not aware of the precise amount that he would be compensated for his testimony.  He was aware, however, that he could make up to $5,000.  Since this fact was the one Dr. Cook was aware of, it is this fact that had the potential for causing him to be biased.  Because the jury was made aware of this fact, defendants were able to fully expose this potential source of bias.  More detailed information would have served no purpose; Dr. Cook was not aware of it and could not have been biased by it.  Accordingly, we find no abuse of discretion here.

F. Remittitur

Defendants' final contention is that they are entitled to a remittitur because plaintiffs failed to prove damages for the loss of a normal life.  Specifically, defendants assert that plaintiffs failed to prove that they lost the ability to conceive children.  The jury awarded plaintiffs $1,200,000 for the loss of a normal life.  Generally, the amount of a verdict is a matter lying within the discretion of the jury.  
Guerrero v. City of Chicago
, 117 Ill. App. 3d 348, 352 (1983).  A remittitur should be granted only if an award is beyond the " ' "flexible range of what is reasonably supported by the facts." ' "  
Guerrero
, 117 Ill. App. 3d at 352, quoting 
Brandel v. Yellow Cab Co.
, 98 Ill. App. 3d 88, 100 (1981), quoting 
House v. Stocker
, 34 Ill. App. 3d 740, 746 (1975).

In support of this argument, defendants point to what they term plaintiffs' "diminished fertility."  Defendants note that plaintiffs "had undergone fertility treatments for years before managing to conceive their first child."  It is thus undisputed that plaintiffs, with the aid of fertility treatments, were able to produce one child.  

We find defendants' argument completely unpersuasive.  Quite simply, plaintiffs had previously managed, albeit with the aid of fertility treatments, to conceive once.  It is further undisputed that plaintiffs, following the hysterectomy, had no chance of conceiving, with or without fertility treatments.  Thus, an evidentiary basis existed from which the jury could conclude that plaintiffs lost the ability to conceive.  Because a sufficient evidentiary basis supports the jury's award of damages, a remittitur would not be appropriate in the instant case.

II. CONCLUSION

For the foregoing reasons, the decision of the circuit court of Du Page County is affirmed.

Affirmed.

O'MALLEY
 and CALLUM, JJ., concur.