2023 IL App (1st) 221056-U

No. 1-22-1056

Third Division
March 22, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

|  |  |  |
|---|---|---|
| TSUJIORKA WALKER, | ) | Appeal from the Circuit Court |
|  | ) | of Cook County. |
| Plaintiff-Appellee, | ) |  |
|  | ) | No. 20 L 1335 |
| v. | ) |  |
|  | ) | The Honorable |
| LAKESHA STEWARD, | ) | Clare E. McWilliams, |
|  | ) | Judge Presiding. |
| Defendant-Appellant. | ) |  |
|  | ) |  |

_____

JUSTICE REYES delivered the judgment of the court.
Justices Ellis and Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The trial court erred in barring the testimony of defendant's expert witness, where the expert should have been permitted to testify as to plaintiff's blood alcohol level and the effects of alcohol consumption generally.

¶ 2    While driving her automobile, defendant Lakesha Steward struck plaintiff Tsujiorka Walker, who was riding a motorcycle, causing him injuries. Plaintiff filed suit and, in the course of discovery, defendant took the evidence deposition of a toxicologist, who opined that plaintiff's blood alcohol level was over the legal limit at the time of the incident and that such

a blood alcohol level would likely have contributed to his injuries. Prior to trial, however, plaintiff filed a motion *in limine* to exclude the doctor's testimony, which was granted. Since there was no other evidence as to plaintiff's intoxication presented during trial, the trial court declined to give jury instructions on intoxication or on contributory negligence. The jury found in plaintiff's favor, awarding him over $800,000. Defendant now appeals and, for the reasons that follow, we reverse and remand for a new trial.

¶ 3                                    BACKGROUND

¶ 4        On May 23, 2015, after visiting a restaurant on Indiana Avenue in Riverdale, defendant returned to her vehicle, which was parked in a southbound parking lane along Indiana Avenue. Defendant, wishing to travel northbound, made a U-turn from the parking lane into the northbound lane of Indiana Avenue. When doing so, however, she collided with plaintiff, who was on a motorcycle. The collision rendered plaintiff unconscious and caused him serious injuries, including a week spent in a coma.

¶ 5        Plaintiff filed suit against defendant, alleging that she had negligently operated her vehicle, causing the accident. In her answer, defendant denied causing plaintiff's injuries and raised a number of affirmative defenses, including allegations that plaintiff did not exercise a reasonable degree of care in operating his vehicle and that plaintiff was operating his vehicle while under the influence of alcohol. The matter proceeded to discovery and, eventually, to a jury trial.

¶ 6        As part of discovery, defendant disclosed Dr. Jerrold Leiken as a controlled expert witness under Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2018), and he testified in an evidence

deposition.[1] At the beginning of the deposition, plaintiff's counsel stated that he had a standing objection to Dr. Leiken's testimony, and that plaintiff was participating in the deposition "subject to any motions in limine I may bring." Dr. Leiken testified that he is a physician who specializes in medical toxicology and that he was retained by defendant to perform an independent medical review of plaintiff's medical records stemming from the accident.[2] Dr. Leiken testified that plaintiff's records provided that plaintiff had a serum alcohol level of 149 milligrams per deciliter, which translated to a blood alcohol level of 0.126, approximately one and a half times the legal limit of 0.08. Dr. Leiken noted that the records provided that plaintiff's blood was drawn slightly over an hour after the accident and opined, to a reasonable degree of medical and scientific certainty, that plaintiff's blood alcohol level at the time of the accident would have been approximately the same. Dr. Leiken further opined that, at the time of the accident, plaintiff "was significantly alcohol intoxicated," based on plaintiff's medical records, which indicated that plaintiff had admitted to drinking alcohol that day, plaintiff's blood alcohol level, and the "known effects" of alcohol, especially in a "complicated safety-sensitive position[ ]" such as operating a motorcycle. Finally, Dr. Leiken opined that plaintiff "was at increased risk for being involved in a motorcycle motor vehicle accident and thus impaired due to significant alcohol intoxication" and that, to a reasonable degree of medical toxicological certainty, plaintiff's alcohol consumption was a contributing factor to the accident.

¶ 7        On cross-examination, Dr. Leiken testified that he was unaware of the speed of either plaintiff's motorcycle or defendant's vehicle prior to the collision, and did not have an opinion

---

[1] We note that the transcript from the evidence deposition was purportedly attached to plaintiff's motion *in limine* to bar Dr. Leiken's testimony, as well as defendant's posttrial motion for a new trial.

[2] Plaintiff's medical records are not included in the record on appeal.

as to whether the collision was unavoidable regardless of whether there was alcohol present in plaintiff's system. Dr. Leiken further testified that he was unaware of plaintiff's conduct leading up to the collision, other than the notation in plaintiff's medical report that he had consumed alcohol that day. Dr. Leiken admitted that, as plaintiff was comatose when he arrived at the hospital, he was unaware of the source of information as to plaintiff's medical history. Dr. Leiken also testified that he was unaware of the hospital's policies regarding calibration of the device utilized to test plaintiff's blood serum, nor was he aware of the chain of custody of the blood sample once it was drawn, although he testified that it appeared routine clinical practices were followed.

¶ 8        Prior to trial, plaintiff filed a motion *in limine* to bar any evidence as to plaintiff's blood alcohol level, including the testimony of Dr. Leiken.[3] Relying on the case of *Petraski v. Thedos* (*Petraski II*), 2011 IL App (1st) 103218, plaintiff claimed that, where there is no evidence as to speeding or other erratic behavior or evidence corroborating a finding of impairment beyond a blood sample, a toxicologist's opinion that a person is intoxicated is inadmissible. Here, plaintiff argued that there was no evidence that he had been drinking alcohol or that he had any impairment of his mental or physical abilities. Plaintiff further argued that Dr. Leiken admitted in his deposition that he had no information as to what plaintiff consumed, if anything, or how much he consumed. Dr. Leiken also was not able to testify as to how plaintiff was acting prior to the accident. Plaintiff claimed that Dr. Leiken relied only on an "unreliable blood alcohol test" without evidence of chain of custody or proper calibration and which was taken after plaintiff had been given medications containing ethanol.

_____

[3] We note that, while the motion cites numerous exhibits, those exhibits are not included in the record on appeal.

¶ 9        After a hearing, the trial court granted the motion *in limine*, barring Dr. Leiken's testimony. At the hearing, plaintiff's counsel argued that "the thrust of the case is Petraski. This is Petraski." Counsel claimed that, under *Petraski II*, where there was a "single piece of paper" showing an elevated blood alcohol level, but no evidence of a corollary between the incident and alcohol, evidence of alcohol was inadmissible. Counsel argued that here, where there was a "chain of custody issue" with respect to the test and Dr. Leiken admittedly did not have any knowledge of plaintiff's conduct prior to the collision, *Petraski II* required that Dr. Leiken's testimony be barred. In response, defense counsel noted that there were two *Petraski* cases and that the two cases made a distinction between intoxication and impairment as a result of intoxication—the first (*Petraski v. Thedos*, 382 Ill. App. 3d 22 (2008) (*Petraski I*)) found that evidence of an individual's blood alcohol level was admissible as probative of the issue of intoxication, while the second found that an expert could not opine as to an individual's impairment based on intoxication unless there was more than simply a blood alcohol reading. Thus, defense counsel claimed that "the blood alcohol reading is sufficient and admissible to go to the jury and goes more toward weight than admissibility." Defense counsel also claimed that plaintiff's challenges as to the chain of custody were inapplicable to a civil case.

¶ 10       The trial court inquired of plaintiff's counsel whether *Petraski II* superseded *Petraski I* such that it was "essentially wiped out," and counsel indicated that it had. Defense counsel disagreed, arguing that "my reading of Petraski 1, the blood alcohol comes in; my reading of Petraski 2 is that *** the opinion stating the blood alcohol resulted in impairment of the party is not admissible unless you show corroboration." The trial court responded that the distinction seemed confusing and that "I'm looking at Petraski 2 here, the 2011 case, and I think what they're also saying is you're not able to take this blood alcohol level in a vacuum without

corroborating evidence." The trial court asked whether the defense had any such corroborating information, and counsel indicated that defendant would be testifying about her observations of plaintiff's conduct.[4] Plaintiff's counsel argued that even if defendant testified, that would be irrelevant to the issue at hand, as "what he did and what he used to formulate his opinion" was at issue, and Dr. Leiken admittedly did not rely on any information about the parties' conduct in formulating his opinion. Counsel concluded: "This is Petraski exactly. Maybe even stronger than Petraski."

¶ 11    After hearing the parties' arguments, the trial court indicated that it had the opportunity to review both *Petraski* cases and "I do agree with the plaintiffs here. This motion is granted." Defense counsel clarified whether this ruling meant that there would be no evidence of alcohol in the case, and the trial court stated, "[n]ot based on what I've heard," as the only evidence of alcohol came from plaintiff's medical records. Defense counsel added that there was also the interpretation of those records by Dr. Leiken, who would testify as to the effects of that level of intoxication and "I don't see how that's not probative somehow to the plaintiff's contributory negligence in light of the Illinois IPI jury instructions." The trial court responded: "Well, I'm looking at Petraski and I believe I'm following it and it's quite textbook and it channels this case. So you've made your record and that's the court's ruling."

¶ 12    The record on appeal contains no transcript from the trial proceedings, as no court reporter was present. Instead, the parties have submitted a bystander's report, which has been certified by the trial court as an accurate report of the proceedings, as permitted by Illinois Supreme

---

[4] We note that defendant ultimately did not testify about plaintiff's conduct and instead testified that she did not approach him after the accident.

Court Rule 323(c) (eff. July 1, 2017). Accordingly, our knowledge of the trial proceedings is limited to the information provided in the bystander's report.

¶ 13        According to the bystander's report, a number of witnesses testified at trial, including the following occurrence witnesses. Defendant testified that she had parked her vehicle (a Cadillac SUV) outside a restaurant, where she was picking up an order. After receiving her order, she returned to her vehicle, looked in her rearview and sideview mirrors to ensure the road was clear, then left the parking spot, making a U-turn. As she was making her turn, she "heard a loud boom"; she did not observe plaintiff or his motorcycle before the collision. The impact damaged her vehicle's door, preventing her from opening the door. Defendant observed plaintiff lying on the ground and a woman approached him and spoke to him. When the police arrived on the scene, defendant told them that the collision occurred while she was attempting to make a U-turn and that it was "an honest mistake."

¶ 14        Plaintiff testified that he had no memory of what he was doing on the date of the accident and did not remember where he was coming from or where he was going at the time of the collision. As a result of the collision, plaintiff was rendered unconscious and was in a coma for approximately a week. His injuries included memory loss, a displaced left humerus fracture which required surgery, traumatic brain injury with brain contusions and hemorrhages, a scalp laceration, abrasions, and a skull fracture.

¶ 15        Witnesses Ashley Harris and Diana Hawkins were outside the restaurant near their vehicles at the time of the accident. Harris testified that the accident occurred in the evening, but that the street was well-lit. Both witnesses observed defendant's vehicle make a U-turn from her parking spot and collide with plaintiff's motorcycle. Harris testified that plaintiff was not driving unusually and was not speeding, and further testified that at the time defendant

attempted the U-turn, plaintiff's motorcycle was "already very close, and it was so tight that a U-turn could not be made safely." Harris exited her vehicle and stayed at the scene until police arrived, while Hawkins called 911, then remained with plaintiff and attempted to speak to him until paramedics arrived.

¶ 16     Riverdale police officer Tara Powers testified that she responded to a call at the restaurant and, when she arrived, observed the scene of a traffic collision that had occurred between a motorcycle and a vehicle. Plaintiff, the motorcycle driver, was on the ground and unconscious, and paramedics were dispatched. Powers spoke to defendant, and defendant admitted that the accident was her fault and was caused by her attempting a U-turn. Powers testified that "her investigation found no indication that the motorcycle driver acted improperly."

¶ 17     After the close of testimony, the trial court held a jury instruction conference. Defendant sought instructions on the issue of contributory negligence, but the trial court refused the instructions as there was no testimony regarding negligence on the part of plaintiff at any time during the trial. The jury found in favor of plaintiff, awarding him $827,868, and the trial court entered judgment on the verdict. Defendant filed a posttrial motion, which was denied, and this appeal follows.

¶ 18                                          ANALYSIS

¶ 19     On appeal, defendant claims that the trial court erred in barring Dr. Leiken's testimony and further erred in denying her request to instruct the jury on the issue of contributory negligence. As an initial matter, we note that the record on appeal indicates that, six weeks after the filing of defendant's notice of appeal, plaintiff filed a motion for prejudgment interest pursuant to section 2-1303 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1303 (West 2022)). Accordingly, we briefly address our jurisdiction to consider the instant appeal in light of the

subsequent motion filed by plaintiff.[5] See *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009) ("A reviewing court must ascertain its jurisdiction before proceeding in a cause of action, regardless of whether either party has raised the issue."); *A.M. Realty Western L.L.C. v. MSMC Realty, L.L.C.*, 2016 IL App (1st) 151087, ¶ 67 ("Although neither party raises the issue of jurisdiction, an appellate court has an independent duty to consider whether or not it has jurisdiction to hear an appeal.").

¶ 20     Generally, we have jurisdiction to consider only final judgments. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). There are exceptions to this rule; however, our supreme court has made clear that "[t]he law is well established that unless specifically authorized by the rules of this court, the appellate court has no jurisdiction to review judgments, orders or decrees which are not final." *Department of Central Management Services v. American Federation of State, County & Municipal Employees*, 182 Ill. 2d 234, 238 (1998). A pending claim for prejudgment interest typically renders a judgment nonfinal unless the trial court makes a finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there is no just reason for delaying either enforcement or appeal or both. See, *e.g.*, *Montgomery Ward & Co. v. Wetzel*, 98 Ill. App. 3d 243, 249-50 (1981); *Rago Machine Products, Inc. v. Shields Technologies, Inc.*, 233 Ill. App. 3d 140, 145 (1992).

¶ 21     In this case, however, the trial court's order entering judgment on the jury's verdict disposed of all pending matters, as plaintiff admittedly had not made a request for prejudgment interest in his complaint. Instead, in his motion for prejudgment interest, plaintiff claims that section 2-1303 imposes a mandatory award of prejudgment interest and requests an order

_____

[5] We discuss plaintiff's motion solely for the purposes of analyzing our jurisdiction and make no comment as to the propriety of plaintiff's motion or its merits, as it is not before us on this appeal.

awarding such interest pursuant to the statute. Our supreme court has held that a request for interest under section 2-1303 which is made after a notice of appeal is filed constitutes a matter collateral to the judgment, and is not part of the judgment itself. See *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 175 (2011) (discussing postjudgment interest under section 2-1303). We therefore find that we have jurisdiction to consider the instant appeal, and proceed to the merits of the parties' arguments.

¶ 22                                        *Dr. Leiken's Testimony*

¶ 23        Defendant's primary argument on appeal is that the trial court erred in barring Dr. Leiken's testimony as to plaintiff's alcohol consumption and its likely effects. The decision of whether to admit expert testimony is a matter within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Snelson v. Kamm*, 204 Ill. 2d 1, 24 (2003). A trial court abuses its discretion "only where no reasonable person could have agreed with the trial court's decision." *Werner v. Nebal*, 377 Ill. App. 3d 447, 454 (2007) (citing *Lawler v. MacDuff*, 335 Ill. App. 3d 144, 147 (2002)).

¶ 24        Defendant first contends that plaintiff has waived any objection to Dr. Leiken's testimony, as the issues raised in plaintiff's motion *in limine* were not first raised during Dr. Leiken's evidence deposition. Under Illinois Supreme Court Rule 211(c), "[g]rounds of objection to the competency of [a] deponent or admissibility of testimony which might have been corrected during the taking of the deposition are waived by failure to make them at that time." Otherwise, "objections to the competency of the deponent or admissibility of testimony may be made when the testimony is offered in evidence." *Id.* Here, plaintiff claims that his attorney did, in fact, object during Dr. Leiken's testimony and, moreover, the issues with Dr. Leiken's testimony were not ones which "might have been corrected during the taking of the deposition"

(*id.*) so objection at the time was not necessary in any event. See *Somers v. Quinn*, 373 Ill. App. 3d 87, 97 (2007) (an objection is not required where the party would be "powerless to remedy" the defect in the expert's testimony during the deposition).

¶ 25    In his motion *in limine* to bar Dr. Leiken's testimony, plaintiff claimed that there were foundational issues with the testimony, as a blood sample was insufficient to establish intoxication without corroborating evidence of impairment, which Dr. Leiken admittedly did not consider. Plaintiff further claimed that Dr. Leiken was unable to establish that the blood was accurately tested, as he had no knowledge of the hospital's methods for drawing the blood, whether the hospital's equipment was properly calibrated, or the chain of custody of the blood sample. Finally, plaintiff claimed that the blood sample was "[c]ontaminated," as plaintiff was injected with drugs containing ethanol prior to the test.

¶ 26    Our review of the record does establish that several of these issues were, in fact, raised during Dr. Leiken's deposition. For instance, plaintiff's counsel questioned Dr. Leiken extensively as to his knowledge of the hospital's procedures and the chain of custody of the blood sample. Plaintiff's counsel also questioned Dr. Leiken as to his knowledge of plaintiff's actions prior to the accident, including whether plaintiff's conduct demonstrated impairment. Challenges to his testimony based on those issues were therefore properly raised. We agree with defendant, however, that plaintiff's counsel never questioned Dr. Leiken as to the effect of the drugs that plaintiff was administered prior to the test. Dr. Leiken could certainly have testified on that subject during his deposition and, therefore, counsel's failure to object at the time of the deposition results in the waiver of this issue. See *Lundell v. Citrano*, 129 Ill. App. 3d 390, 598 (1984) (affirming trial court's finding of waiver where the lack of foundation for

the expert's testimony was evident at the time of the deposition and the plaintiff should have been afforded a chance to remedy the defect).

¶ 27    Defendant next contends that the trial court erred in barring Dr. Leiken's testimony based on its interpretation of *Petraski II*. Despite the fact that plaintiff raised several challenges to Dr. Leiken's testimony, as detailed above, the trial court's decision to bar his testimony had a single basis: its interpretation of *Petraski II*, which it found to be "quite textbook" in holding that an expert's testimony should be barred if there is no corroboration of intoxication. The trial court in this case was explicit in stating that it was following *Petraski II*, which it found "channels this case." Accordingly, we begin our analysis with an in-depth discussion of *Petraski II* and its application to the case at bar.

¶ 28    The litigation at issue in *Petraski II* was first considered by this court in *Petraski I*, 382 Ill. App. 3d 22. In that case, the plaintiff was injured when she turned her vehicle into the path of a speeding police vehicle driven by the defendant. *Id.* at 23. A jury rendered a verdict in favor of the plaintiff, which was reduced by 25% based on her contributory negligence. *Id.* The issue on appeal in *Petraski I* was whether expert testimony as to the plaintiff's consumption of alcohol should have been admitted. *Id.* In a discovery deposition, used as an offer of proof in response to the plaintiff's motion *in limine* to bar such evidence, the defendant's expert testified that a test of the plaintiff's blood following the accident revealed an elevated blood alcohol level and that her blood alcohol level would have been above 0.08 at the time of the accident. *Id.* at 25. The expert, however, also testified that he did not know when the plaintiff began or stopped drinking alcohol, what she drank or ate, or how much she drank. *Id.* at 26. The expert opined that the plaintiff's blood alcohol level would have affected her depth perception, peripheral vision, and ability to assess speeds, as well as her judgment of risk-taking behavior.

*Id.* He was unable to opine whether the plaintiff's blood alcohol level caused or contributed to the accident, but opined that the plaintiff's blood alcohol level of 0.116 would impair a person's ability to operate a vehicle safely for " 'an overwhelming majority of the population.' " *Id.* The trial court barred the expert's testimony, finding it to be too speculative to be admissible, and also finding that the prejudicial effect of the testimony outweighed its probative value. *Id.*

¶ 29    On appeal, this court reversed and remanded for a new trial, finding that the trial court had abused its discretion in excluding the testimony. *Id.* at 33. We first noted that " '[e]vidence of a plaintiff's intoxication is relevant to the extent that it affects the care that he takes for his own safety and is therefore admissible as a circumstance to be weighed by the trier of fact in its determination of the issue of due care.' " *Id.* at 27 (quoting *Marshall v. Osborn*, 213 Ill. App. 3d 134, 140 (1991)). We additionally noted that the expert opined that the plaintiff's blood alcohol level was above 0.08, which gives rise to a statutory presumption that a person is under the influence of alcohol. *Id.* (citing 625 ILCS 5/11-501.2(b)(3) (West 2000)). We thus found that alcohol-consumption evidence was relevant to the issue of the plaintiff's contributory negligence, as the jury could have used the expert's testimony as an explanation for her conduct. *Id.* at 28.

¶ 30    We rejected the plaintiff's argument that the evidence was irrelevant due to the expert's inability to opine as to the plaintiff's actual impairment. *Id.* at 27-28. The plaintiff claimed that, since the expert could not quantify the level of her impairment, nor could he render an opinion as to whether alcohol caused or contributed to the accident, his testimony would lead only to speculation without any supporting evidence that the consumption caused impairment. *Id.* We disagreed, noting that the cases relied on by the plaintiff were cases in which the only evidence of intoxication was evidence of the consumption of alcohol; in the plaintiff's case, however,

there was a blood alcohol level sufficiently high to support a statutory presumption that she was under the influence of alcohol. *Id.* at 28. We also rejected the plaintiff's contention that the expert's testimony was unreliable, finding that he had provided a factual basis for his opinion in explaining his analysis of the blood test results. *Id.* at 31.

¶ 31    We further found that expert testimony that the plaintiff's blood alcohol level created a presumption of intoxication was "extremely probative of whether she was partially at fault for the accident." *Id.* at 32. By contrast, we found an "insubstantial risk" of unfair prejudice. *Id.* at 33. Accordingly, we reversed and remanded for a new trial. *Id.*

¶ 32    The events of the new trial gave rise to the subsequent opinion in *Petraski II*.[6] During the new trial, evidence of the plaintiff's alcohol consumption was presented to the jury through the testimony of the defendant's expert—coincidentally, the same Dr. Leiken whose testimony is at issue in the instant appeal. *Petraski II*, 2011 IL App (1st) 103218, ¶¶ 81-85. Dr. Leiken testified that, at the time of the accident, the plaintiff's blood alcohol level would have been between 0.109 and 0.144, and further testified to the effects of alcohol in the average person, including reduced depth perception, impaired judgment, lack of coordination, and increased reaction time. *Id.* ¶ 84. Unlike the defendant's expert in the first trial, Dr. Leiken also specifically testified that the plaintiff was intoxicated and impaired at the time of the accident, and that her alcohol consumption had, in fact affected the plaintiff on the night of the accident. *Id.* On cross-examination, however, Dr. Leiken testified that he was unable to quantify the plaintiff's level of impairment and that he was not aware of any specific facts regarding the plaintiff's actions on the night of the accident. *Id.* ¶ 85. At the close of the trial, the jury returned a verdict in favor of the defendant. *Id.* ¶ 90. The plaintiff filed a motion for a new trial, which

---

[6] We note that *Petraski II* was decided by a different panel of justices than *Petraski I*.

the trial court granted, finding that it had erred in several of its rulings, including the allowance of evidence regarding the plaintiff's blood alcohol content. *Id.*

¶ 33        On appeal, this court affirmed the trial court's grant of a new trial. *Id.* ¶ 94. With respect to the issue of blood alcohol evidence, we found that the trial court did not abuse its discretion in determining that Dr. Leiken's testimony should not have been admitted. *Id.* ¶ 125. We first noted that, based on our holding in *Petraski I*, the trial court permitted Dr. Leiken to testify to his opinions as to the plaintiff's blood alcohol content. *Id.* ¶ 111. Dr. Leiken testified that the plaintiff's blood alcohol level was above 0.08 and testified to the effects of intoxication on the average person, "but then went on to attribute those effects to [the plaintiff's] actual conduct." *Id.* It was only the testimony as to the plaintiff's *actual* level of impairment which the trial court later found problematic. *Id.* ¶ 116. We could not find that it was an abuse of discretion for the trial court to reach this result, as there was no proper basis for Dr. Leiken's opinion, since he did not take into account any specific information about the plaintiff personally or about the events leading up to the accident. *Id.* ¶¶ 124-25. We noted that the trial court acknowledged that an expert could reasonably opine that a specific plaintiff may have been impaired based on "unusually high levels of intoxication," but that the plaintiff's blood alcohol level in the case before it was much lower. *Id.* ¶ 123. Accordingly, we concluded that "[w]e cannot say that the trial court abused its discretion when it found that it had erred in allowing Dr. Leiken to testify that [the plaintiff] was in fact intoxicated and impaired." *Id.* ¶ 148.

¶ 34        In the case at bar, we agree with the trial court that *Petraski II* "channels this case," as it involves very similar testimony by the same expert. We cannot agree, however, with the trial court's interpretation of that case, nor with the interpretation suggested by plaintiff's counsel. As a trial court's misapprehension of the law constitutes an abuse of discretion, we must

therefore reverse and remand for a new trial. See *Macknin v. Macknin*, 404 Ill. App. 3d 520, 530 (2010) (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)) (a circuit court abuses its discretion when it makes an error of law); *Cable America, Inc. v. Pace Electronics, Inc.*, 396 Ill. App. 3d 15, 24 (2009) (same); *Engel v. Loyfman*, 383 Ill. App. 3d 191, 197-98 (2008) (same); *Najas Cortes v. Orion Securities, Inc.*, 362 Ill. App. 3d 1043, 1047 (2005) (same).

¶ 35    During the motion *in limine* hearing, the trial court indicated that its interpretation of *Petraski II* was that "you're not able to take this blood alcohol level in a vacuum without corroborating evidence." *Petraski II* did not hold, however, that expert testimony as to blood alcohol level required corroborating evidence to be admissible. Indeed, we specifically noted that the only issue as to Dr. Leiken's testimony was his testimony about the plaintiff's *actual* impairment or intoxication, as there was no evidence concerning the plaintiff's conduct or the events preceding the accident. See *Petraski II*, 2011 IL App (1st) 103218, ¶ 116 ("the trial court did not rule that it had erred in admitting the entirety of Dr. Leiken's testimony, only that part of his testimony where Leiken opined that [the plaintiff] was in fact intoxicated and impaired"). We reach a similar result here—to the extent that Dr. Leiken opined that plaintiff was actually intoxicated or impaired, such opinions were properly barred.

¶ 36    Dr. Leiken's testimony, however, was not limited to opining that plaintiff was actually intoxicated or impaired. Dr. Leiken also testified as to plaintiff's blood alcohol level of 0.126 and to the effects of alcohol consumption generally. Under the Illinois Vehicle Code, where an individual has a blood alcohol level of 0.08 or more, "it shall be presumed that the person was under the influence of alcohol." 625 ILCS 5/11-501.2(b)(3) (West 2020); see also *Petraski I*, 382 Ill. App. 3d at 27. This presumption may be overcome by evidence rebutting the

presumption. *Cairns v. Hansen*, 170 Ill. App. 3d 505, 511 (1988); *People v. Morris*, 394 Ill. App. 3d 678, 682 (2009).

¶ 37   Dr. Leiken's testimony in the instant case is identical to the testimony that we found should have been admitted in *Petraski I*, an opinion which we reaffirmed in *Petraski II*. By barring Dr. Leiken's testimony as a whole, then, the trial court prevented the jury from hearing evidence that should have been admitted. As we noted in *Petraski I*, "[w]e believe expert testimony that [plaintiff's] blood-alcohol level created a presumption of intoxication was extremely probative of whether [he] was partially at fault for the accident." *Petraski I*, 382 Ill. App. 3d at 32. We therefore reverse and remand this case for a new trial, in which evidence of plaintiff's blood alcohol level should be admitted.

¶ 38                                   *Jury Instructions*

¶ 39   Defendant also contends that the trial court erred in denying her request to instruct the jury on the issue of contributory negligence. The trial court's decision was based on its determination that such an instruction was not warranted, as there was no evidence as to plaintiff's negligence. Given our determination that evidence of plaintiff's alcohol consumption should have been admitted and warrants a new trial, we have no need to consider this argument.

¶ 40                                   CONCLUSION

¶ 41   For the reasons set forth above, we find that the trial court abused its discretion in barring the entirety of Dr. Leiken's testimony. While his testimony as to plaintiff's actual intoxication or impairment was properly excluded, his testimony as to plaintiff's blood alcohol level and the effects of alcohol consumption generally should have been admitted.

¶ 42   Reversed and remanded.